2004 VT 115

**In re Richard and Elinor HUNTLEY**

[865 A.2d 1123]

No. 03-369

¶ 1. November 9, 2004. Richard and Elinor Huntley, owners of a five-acre gravel mine, appeal a declaratory ruling by the Environmental Board. The Board determined that the Huntleys' mine and associated property remained subject to Act 250 jurisdiction even though the site had been fully reclaimed, and its former permit had expired. We reverse and hold that, when a permit expires pursuant to 10 V.S.A. § 6090(b)(1), the land is no longer subject to Act 250 jurisdiction absent some activity to trigger the statute's application.

¶ 2. In 1986, the Huntleys' predecessors in interest applied for an Act 250 permit, under § 6090(b)(1) (extraction of mineral resources), to extract gravel from a five-acre segment of their approximately 100-acre farm in Bethel. They proposed a three-phase mining operation with detailed reclamation requirements to be completed at each phase. The District 3 Environmental Commission approved the proposal contingent that it be "completed and maintained in conformance with all of the terms and conditions of that application, and of Land Use Permit #3W0473." That permit obligated the applicant to "complete and maintain" the project only as approved by the district commission and permit conditions. The commission found that, if the project was operated and reclaimed in accordance with the permit's conditions, it would "not result in undue harm to the environment and [would] result in an area suitable for continued agricultural use." The permit specified that the district environmental commission would "maintain[] continuing jurisdiction during the lifetime of the permit" and that the permit would expire on July 1, 1995, unless extended.

¶ 3. The Huntleys subsequently acquired the property. In 1995, they obtained a permit amendment authorizing minor changes in mining operations and extending the completion date for all mining and reclamation activities to October 1, 2002.[1] By the October deadline, the Huntleys had ceased mining operations, and fully reclaimed and rehabilitated the property in accordance with the permit requirements. A month later, as part of preparations to sell the property, the Huntleys requested an opinion from the district commission determining whether their property remained subject to Act 250 jurisdiction. In response, the District 3 coordinator concluded that, although all mining had ceased, the permit had expired and the land had been reclaimed in compliance with permit requirements, the project remained subject to continuing Act 250 jurisdiction, and that "[a]ny subsequent activity on the land may require a permit."

¶ 4. The Huntleys appealed to the Environmental Board, which framed the issue as follows:

> Does a sand and gravel extraction project remain subject to Act 250 jurisdiction when the project's land use permit has

---

[1] Despite a 1994 revision to Act 250 requiring that gravel mine permits "shall be for a specified period," 1993, No. 232 (Adj. Sess.), § 35 (codified at 10 V.S.A. § 6090(b)(1)), the permit stated that it was "issued for an indefinite term, as long as there is compliance with the conditions herein." The Huntleys, the Environmental Board, and the district coordinator all agree that this provision was a mistake. There is no dispute that the permit in fact expired on October 1, 2002.

expired pursuant to 10 V.S.A. § 6090(b)(1); and where the project tract has been reclaimed in accordance with the requirements of 10 V.S.A. § 6086(a)(9)(E)(ii); and where said reclamation results in there being no potential for future environmental impacts from the prior sand and gravel extraction project?

¶ 5. The Board found that it had continuing jurisdiction over the project. The Board reasoned that permit duration and jurisdiction are two different concepts: the permit duration determines the life of a project, while jurisdiction determines the Board's oversight authority. In cases involving a sand and gravel extraction operation, the Board concluded that the need to ensure that future property owners maintain compliance with the permitted reclamation plan supported continuing jurisdiction beyond the permit's expiration date. The Board acknowledged, however, that only a "material or substantial change" to the permitted project would require a permit amendment. See Environmental Board Rule (EBR) 2(A)(1)(e), 4 Code of Vermont Rules 12 003 001-6 (2004). This appeal followed.

¶ 6. In reviewing the Board's decision, the Board's interpretation of Act 250 and its rules control, unless a compelling indication of error exists. *In re Rusin*, 162 Vt. 185, 188, 643 A.2d 1209, 1210 (1994). If the Board operates outside the bounds authorized by its enabling legislation, we will intervene. *In re Agency of Admin.*, 141 Vt. 68, 75, 444 A.2d 1349, 1352 (1982). When examining the legislative grant of authority to the Board, we look to the plain meaning of the statutory language and are guided by the Legislature's intent, "as evidenced by the statutes themselves." *In re Audet*, 2004 VT 30, ¶ 9, 176 Vt. 617, 850 A.2d 1000 (mem.) (internal citations and quotations omitted). We

conclude that, under the circumstances in this case, Act 250 jurisdiction ended when the permit expired.

¶ 7. The Board's decision in this case equates jurisdiction with continuing oversight of the land and the authority to "ensure" that the Huntleys followed certain aspects of the reclamation plan and other permit requirements. For example, the original permit required a vegetative buffer to screen the project. The Board was concerned that if jurisdiction was lifted the Huntleys could remove this buffer. The Board further believed it needed jurisdiction to ensure that the Huntleys did not ignore the reclamation plan. The Board's decision, in effect, extended its enforcement powers beyond the permit's expiration date.

¶ 8. In enacting Act 250, the Legislature conferred authority on the Board to bring enforcement actions. For example, the Board can impose penalties for violations of a permit or failure to obtain a permit. 10 V.S.A. § 6003. The Board can revoke permits if a holder violates a permit's terms or conditions and fails to correct the violation. *Id.* § 6090(c); EBR 38, 6 Code of Vermont Rules 12 003 001-33 to 001-34 (2004). Additionally, the Board can investigate to determine compliance with a permit, 10 V.S.A. § 8005, and the Board can request that the secretary issue a warning for violations. *Id.* §§ 8004, 8006(b).

¶ 9. However, the Board's enforcement authority is tied to development, as defined in Act 250, and the existence of a permit. Under Act 250, commencing development triggers jurisdiction and the obligation to obtain a permit. 10 V.S.A. § 6081. "Development" includes, among other things: (1) the construction of improvements for commercial or industrial purposes on more than one acre within a municipality that does not have zoning laws and bylaws, or on more than ten acres if the municipality does have permanent zoning and bylaws, or in munic-

ipalities that choose to have one-acre jurisdiction apply; (2) construction of ten or more housing units; (3) construction above 2500 feet in elevation; and (4) extraction of oil, gas, or fissionable source materials. 10 V.S.A. § 6001(3)(A). In the present case, the Huntleys ceased the sand and mining operation and reclaimed the land. At this time, they are not conducting any activity that constitutes development as defined by Act 250. Thus, the Board has no enforcement authority over the Huntleys' land because no development is taking place.

¶ 10. Furthermore, the permit's plain language states that the permit expired on October 1, 2002. Because the Huntleys' permit expired, the Board has no authority to enforce the terms and conditions of the expired permit. See *Sec'y, Vt. Agency of Natural Res. v. Handy Family Enters.*, 163 Vt. 476, 481, 660 A.2d 309, 312 (1995) (relying on the plain meaning of permit's words). In reaching the opposite conclusion, the Board relied on a 2001 amendment to Act 250, § 6086, which terminated continuing jurisdiction for temporary film, television, or advertising projects that had no long-term impacts.[2] The Board interpreted this

amendment to mean that the Legislature knew how to terminate jurisdiction but it had not terminated jurisdiction for permits granted under § 6090(b)(1) (extraction of mineral resources).

¶ 11. Permits for the development of physical improvements for film, television, or advertising are granted for an indefinite term. § 6090(b)(1). In enacting § 6086(e), the Legislature did not want permits for the temporary construction of film, television, and advertising projects that caused no long-term impact to go on indefinitely. To effectuate this intent, it stated in § 6086(e) that if all the permit's conditions are met, and improvements are no longer in place, the permit ends earlier than it would have and, thus, the Board has no more jurisdiction. In contrast, with respect to other permits issued under Act 250, even if a permit's conditions are met, the permit's expiration date remains effective. Or, if the permit is valid indefinitely under § 6090(b)(1), then the Board's jurisdiction continues indefinitely. § 6090(b)(1). In those situations, the Board's jurisdiction continues beyond the point when the permit's conditions are met and the improvements have been removed. § 6086(e) Thus, this section does not create a new rule that the Board's jurisdiction extends beyond the permit's expiration date in cases involving the extraction of mineral resources, but merely terminates the

---

[2] Section 6086(e) of Title 10 states:

This subsection shall apply with respect to a development that consists of the construction of temporary physical improvements for the purpose of producing films, television programs, or advertisements. These improvements shall be considered "temporary improvements" if they remain in place for less than one year, unless otherwise extended by the permit or a permit amendment, and will not cause a long-term adverse impact under any of the 10 criteria after completion of the project. In situations where this subsection applies, jurisdiction under this chapter shall not continue after the improvements are no longer in place and

the conditions in the permit have been met, provided there is not a long-term adverse impact under any of the 10 criteria after completion of the project; except, however, if jurisdiction is otherwise established under this chapter, this subsection shall not remove jurisdiction. This termination of jurisdiction in these situations does not represent legislative intent with respect to continuing jurisdiction over other types of development not specified in this subsection.

Board's jurisdiction under a specific set of circumstances.

¶ 12. The Board also erroneously interpreted our case law to mean that, once Act 250 is triggered, subsequent events, including the permit's expiration and the completion of reclamation, do not dissolve jurisdiction. The Board relied on *In re Rusin*, 162 Vt. 185, 643 A.2d 1209 (1994), and *In re Wildcat Construction Co.,* 160 Vt. 631, 648 A.2d 827 (1993) (mem.), for this proposition. However, in both cases, the permits had not expired and the permit holders were arguing that events that occurred after the permit was issued dissolved the Board's jurisdiction. *In re Rusin*, 162 Vt. at 188, 643 A.2d at 1210 (rejecting argument that jurisdiction could not continue because the modified project would not have been subject to Act 250 in the first instance); *In re Wildcat Constr. Co.*, 160 Vt. at 632, 648 A.2d at 828-29 (rejecting argument that jurisdiction dissolved because town adopted permanent zoning and subdivision bylaws). Under these circumstances, we held that "[o]nce jurisdiction attaches [under § 6081(a) (permits required)], and a permit . . . is issued, that permit and its conditions will remain in force." *In re Wildcat Constr. Co.*, 160 Vt. at 632, 648 A.2d at 828. In contrast, the Huntleys are not trying to avoid the permit's expiration date; their permit has expired. The above cases involved only subsequent events after jurisdiction had attached, but before the permit expired. Thus, those cases are inapplicable here.

¶ 13. The State in its amicus curiae brief also relies on *In re Audet* for a similar proposition. *In re Audet* involved a landowner who had not yet received an Act 250 permit, and argued that, even though the activities on his land originally triggered Act 250, he abandoned his use and no longer needed to obtain a permit. 2004 VT 30, ¶ 13. We noted in dicta that, in most circumstances, once Act 250 jurisdiction attaches, it does not dissolve. *Id.* However, we agreed with the landowner and held that he abandoned use of his land. *Id.* ¶ 14. *In re Audet* does not contradict our holding today that addresses the situation where a person obtained a permit and the permit expired.

¶ 14. The danger that the Board tries to address — the Huntleys failing to maintain the permit's reclamation requirements — by applying continuing jurisdiction beyond the permit's expiration date can be addressed through the Board's statutory authority. First, the Board has the power to attach appropriate conditions to the permit to "ensure that the development is completed as approved." EBR 32, 6 Code of Vermont Rules 12 003 001-29 (2004). Any condition the Board places on the permit is subject to the requirement that it is an "allowable proper exercise of the police power" and is appropriate. § 6086(c). Second, when a sand and gravel mining operation is involved, the Board must approve the site rehabilitation plan before it grants the permit. § 6086(a)(9)(E)(ii). At this stage, the Board has the power to require compliance with the plan by setting the permit expiration date beyond reclamation. See *id.* (containing no language to prevent such an arrangement).

¶ 15. Because the Board's decision extends its power beyond the bounds authorized by its enabling legislation, we reverse its decision. We hold that when the Huntleys' permit expired pursuant to 10 V.S.A. § 6090(b)(1) the land was no longer subject to Act 250 jurisdiction.

*Reversed.*

Note: Chief Justice Amestoy sat for oral argument but did not participate in this decision.