STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| CVPS/Verizon Act 250 Land Use Permit #7C1252 | } | Docket No. 18-1-07 Vtec |
| CVPS/Verizon/Barry Act 250 Land Use Permit Amendment #7C0677-2 | } | Docket No. 19-1-07 Vtec |
| (Appeals of CVPS) | } | |

Decision and Order on Motion for Summary Judgment

In Docket No. 18-1-07 Vtec, Appellant Central Vermont Public Service Corporation (CVPS) appealed a decision by the District #7 Environmental Commission to grant Act 250 Land Use Permit #7C1252. In Docket No. 19-1-07 Vtec, Appellant appealed a decision by the District #7 Environmental Commission to grant Act 250 Land Use Permit Amendment #7C0677-2, which incorporated an associated jurisdictional ruling. The two appeals have been consolidated.

Appellant is represented by Christopher D. Roy, Esq.; the Land Use Panel of the Vermont Natural Resources Board is represented by Melanie Kehne, Esq. Appellant has moved for summary judgment on both appeals.

The following facts are undisputed unless otherwise noted.

The original Act 250 Permit #7C0677, referred to by the parties as the "Barry Permit," was issued in late 2004 to James and Maureen Barry, George and Doris Pierce, and the Vermont Agency of Transportation. It approved the creation of three building sites on a 289-acre parcel of land located south of the village of Danville on the Danville-Peacham

1

Road.  As issued in 2004, the Barry Permit did not authorize construction on or subdivision of the three parcels, and specifically stated that "[t]he tract of land is not approved for subdivision or the construction of these residences."

The 2004 Barry Permit specifically provided that "[a]n amendment to this permit will be required for actual construction or for the subdivision of any parcels associated with the building sites."  It did not address the installation of electrical or telephone distribution lines.  The 2004 Barry Permit contained standard language stating that it is binding upon the permittees and their "assigns and successors in interest."  The 2004 Barry Permit specifically provided that "[a]ny development on this tract of land has the potential to impact on a mapped deer yard," and required that:

> no further development of the tract shall be allowed unless it can be demonstrated that such development will not further impact on the potential of the tract to continue to serve as a protected deer yard or unless it is demonstrated that the tract itself is no longer appropriate, necessary or functional as a deer yard.

The 2004 Barry Permit also provided that "no further development of the parcel shall be allowed without the concurrence of the Department of Fish and Wildlife, Agency of Natural Resources and the District Environmental Commission," and that "[n]o further subdivision, alteration, and/or development of the parcel of land approved herein shall be permitted without the written approval of the District Commission or a written determination from the District Coordinator that a permit is not required."

Based upon a request for service[1] by a customer, CVPS and co-applicant Verizon New England applied for an Act 250 permit in October 2006 (#7C1252) to extend an electrical distribution and telephone line near Peacham Road in Danville by approximately

---

[1]  CVPS is required to provide such service upon request, pursuant to 30 V.S.A. §2801.  From notations on the plans associated with the application for Act 250 Permit #7C1252, the requesting customer appears to be James Barry.

2,500 feet. All but approximately 800 feet of the line is proposed to be installed underground, along a driveway.

CVPS holds an easement approximately twenty feet in width for the line corridor, which extends across land that is subject to the previously-issued Barry Act 250 Permit. In addition, the line corridor crosses areas designated as prime agricultural soils, Class Two wetlands, streams, and critical wildlife habitat. Specifically, the line corridor crosses a Class Two wetland or its buffer three times. Approximately two-thirds of the area covered by the line corridor is mapped deer wintering habitat. The line corridor is located almost entirely within an area whose soils are mapped as Vershire-Lombard Complex, 8-15% slopes, rocky. The line corridor also crosses an unnamed tributary of Brown Stream. CVPS holds a permit from the Agency of Agriculture, Food & Markets to conduct herbicide treatment along the right-of-way of the line corridor.

On October 31, 2006, CVPS requested a jurisdictional opinion from the District 7 Environmental Coordinator on the issue of whether the line corridor would require an amendment to the Barry Permit, in addition to Act 250 Permit #7C1252 for the line extension itself. The District Coordinator issued an initial Jurisdictional Opinion by email to CVPS, concluding that the line corridor required an amendment to the Barry Permit. On December 20, 2006, the District Commission issued Act 250 Land Use Permit #7C1252 to CVPS and Verizon, and also issued amended Land Use Permit #7C0677-2 (an amendment to the Barry Permit) to CVPS, Verizon, and James and Maureen Barry, incorporating the jurisdictional determination within the jurisdictional section of the permit document.

CVPS appealed Act 250 Permit #7C1252, including its jurisdictional determination, in Docket No. 18-1-07 Vtec, and appealed Act 250 Permit #7C0677-2, including its jurisdictional determination, in Docket No. 19-1-07 Vtec. CVPS has moved for summary judgment that no amendment to the Barry Permit (Act 250 Permit #7C0677-2) was required for this project, and requesting that CVPS be removed as a co-permittee on the Barry

3

Permit.

Express Terms of the Barry Permit

The Barry Permit encompasses a portion of land proposed for the line corridor and expressly prohibits "further development" of the property without a permit amendment, as well as requiring approval of the Department of Fish and Wildlife of the Agency of Natural Resources and the District Environmental Commission. The Barry Permit, by its terms, binds the permittees and their successors in interest to the conditions stated therein.

It is not necessary to look any further than the language of the 2004 Barry Permit to determine that an amendment to it is required prior to the commencement of construction and installation of the electrical distribution line. The 2004 Barry Permit provided that "[n]o further subdivision, alteration, and/or development of the parcel of land approved herein shall be permitted without the written approval of the District Commission or a written determination from the District Coordinator that a permit is not required." It also conditioned any future development of the property on a demonstration that such development will not cause additional impact on the property's suitability as a protected deer yard, and required approval for any future development from the Department of Fish and Wildlife, as well as the District Environmental Commission, due to the sensitive nature of the property. Thus, without regard to who or what entity owns or controls the property subject to the Barry Permit, any further development beyond that authorized in the original permit, including the installation of the electrical and telephone line at issue in the present case, requires a permit amendment from the District Commission.

4

Act 250 Amendment Jurisdiction

Even if it were not required by the express terms of the Barry Permit, Act 250 Rule[2] 34(A) would require a permit amendment for the extension of the electrical and telephone line if the line were to constitute a material or substantial change to the previously-permitted project. As discussed in this Court's decision in Eustance Act 250 Jurisdictional Opinion (#2-231), Docket No. 13-1-06 Vtec, slip op. at 10-11 (Vt. Envtl. Ct., Feb. 16, 2007), several statutory and regulatory provisions govern this analysis.

Act 250 jurisdiction first attaches when "development" is proposed for certain lands and when construction is proposed on a "development;" it prohibits either without a permit. 10 V.S.A. § 6081(a); Eustance, slip op. at 10-11. CVPS argues that 10 V.S.A. §6081(r) exempts this project from Act 250 amendment jurisdiction; however, that provision governs only electrical distribution projects "standing alone," that is, electrical distribution and communication lines that have been permitted as such. It does not address a situation in which a line extension is sought over land that is already subject to an Act 250 permit for another purpose, unrelated to electricity distribution.

The issue of Act 250 jurisdiction over a parcel of land proposed for development is "determined at the commencement of the project," In re Wildcat Constr. Co., Inc., 160 Vt. 631, 632 (1993). Once Act 250 jurisdiction attaches to a project, it thereafter runs with the land. Id.; Eustance, slip op. at 11. Once jurisdiction has attached, it does not "detach" from a parcel unless the permit has expired, In re Huntley, 2004 VT 115, ¶12; 177 Vt. 596, 599 (2004), or unless a proposed activity is governed by an alternative statutory scheme and the legislature has clearly expressed that a different state agency has exclusive jurisdiction to regulate the proposed activity. Glebe Mountain Wind Energy, LLC, Docket No. 234-11-05

---

[2] The former Environmental Board Rules, cited as "EBR __," were replaced by the Act 250 Rules adopted by the Natural Resources Board effective May 1, 2006, cited as "Act 250 Rule __."

Vtec (Vt. Envtl. Ct., Aug. 3, 2006) (holding that wind turbine electrical generation facility was not subject to Act 250 jurisdiction, even though activity was proposed for land encumbered by Act 250 permit, because such activity was regulated independently by Public Service Board).

CVPS argues that Act 250 Rule 70, governing installation of and application for utility lines, constitutes a separate regulatory framework that has sole jurisdiction over this project, to the exclusion of Rule 34(A). However, Rule 70 applies to new construction and does not exempt electrical distribution lines from Rule 34(A)'s reach. Rule 70 simply provides procedures for the processing of applications for new transmission lines. Moreover, if the Natural Resources Board wished specifically to exempt such projects from so-called "amendment jurisdiction," it would be free to do so by way of its rulemaking authority. It has not adopted such an exemption.

Act 250 Rule 34(A) requires a permit amendment to be obtained "for any material or substantial change in a permitted project, or any administrative change in the terms and conditions of a land use permit." Rule 34(A) further provides that "continuing jurisdiction over all development and subdivision permits is vested in the district commissions."

Once Act 250 jurisdiction attached to the subject property with the original Barry Permit in December 2004, subsequent material or substantial changes to any part of the property would require a permit amendment, even if the proposed development would not itself have triggered the permit requirement. Eustance, slip op. at 12; In re: Dover Valley Trail, Docket No. 88-4-06 Vtec, slip op. at 4 (Vt. Envtl. Ct., Jan. 16, 2007).

As material facts have not been provided as to whether this project constitutes a material or substantial change to the Barry Permit, summary judgment is not appropriate on this issue at the present time. However, this denial does not change the result as the Barry Permit itself requires a permit amendment for this project.

6

Co-Applicancy

In issuing the amendment to the Barry Permit, the District Commission named James and Maureen Barry, CVPS, and Verizon as co-permittees. On the application, CVPS listed its legal interest in the land at issue as an "easement;" that is, it appears to hold an easement interest for the twenty-foot-wide line corridor crossing the property subject to the Barry Permit.

CVPS has moved for summary judgment that it should be removed as a co-permittee on the Barry Permit, arguing various policy reasons such as concerns over potential problems that may arise in its operation of the line if a co-permittee should violate terms of the Barry Permit unrelated to the line corridor.

CVPS has directed the Court to no authority for the proposition of removing itself, the owner of the easement and the developer of the line within the line corridor, from the Act 250 permit authorizing that development. CVPS has cited a case in which the former Environmental Board[3] determined that the landowner of the underlying land was not required to be a co-permittee on an original Act 250 application for a utility line corridor, citing then-Environmental Board Rule 10. See Cent. Vt. Pub. Serv. Corp., #7C0734-EB, Mem. of Decision (Vt. Envtl. Bd., Aug. 6, 1991). By contrast, the case now before the Court involves whether the easement holder for the utility line corridor is required to be a co-permittee on an amendment to the Act 250 permit governing the underlying property, if the subject of the amendment is the extension of that utility line corridor.

In response to CVPS' argument, the Land Use Panel has referred the Court to the text of Act 250 Rule 10(A), which provides that the record owner of the property shall be the applicant or a co-applicant "unless good cause is shown to support waiver of this

---

[3] This Court gives decisions of the former Environmental Board the same "weight and consideration" as it gives to its own decisions as precedent. 10 V.S.A. §8504(m).

7

requirement." As discussed in <u>Eustance</u>, slip op. at 12, "[g]iven the public process for issuance of an Act 250 permit, it is reasonable for neighboring landowners and prospective purchasers of neighboring property to rely upon the terms and conditions of a permit governing future activity on the property, or at least to rely on their right to be heard in an amendment proceeding regarding any proposed changes to the permit or to the property covered by the permit." If the only permittees named on Land Use Permit #7C0677-2 were James and Maureen Barry, who are not the owners of the easement or the developers of the electrical transmission line that is the subject of the amendment, it would cause unnecessary confusion to neighboring landowners or prospective purchasers seeking information as to the existence or conditions of the permit allowing development of the line.

On the other hand, CVPS raises valid concerns that in the future it might be subject to penalties for its co-permittees' violation of other terms of the Barry Permit, unrelated to the line corridor, over which CVPS would have no control. It would of course be unfair to penalize CVPS or to make it responsible for compliance with the Barry Permit on some other portion of the property unrelated to the utility line corridor. However, these concerns do not rise to the level of "good cause" to completely waive the co-applicancy requirement of Rule 10(A). Rather, CVPS should be listed as a co-permittee, but only to the extent of its easement interest in the line corridor and not as to the remainder of the Barry project property.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants' Motion for Summary Judgment is DENIED, and summary judgment is GRANTED to the Land Use Panel that an amendment to Permit #7C0677 was required. This decision appears to resolve Docket No. 18-1-07 Vtec; all that appears to remain for resolution in Docket No 19-1-07 Vtec is to clarify the terms of Permit #7C0677-2 to establish

8

that CVPS is a co-permittee only to the extent of its easement interest.

A telephone conference has been scheduled (see enclosed notice) to discuss whether a hearing is necessary on any remaining issues. If the parties believe they can resolve that language by agreement, they may submit an agreed amended copy of Permit #7C0677-2 prior to that date, or submit an agreed schedule for reaching that resolution.

Done at Berlin, Vermont, this 13th day of August, 2007.

_____
Merideth Wright
Environmental Judge