STATE OF VERMONT

SUPERIOR COURT                              ENVIRONMENTAL DIVISION

                                    }
In re Fontaine Act 250 Application          }       Docket No. 12-1-10 Vtec
In re Fontaine Act 250 Reconsideration   }       Docket No. 143-9-10 Vtec
     (Appeals of Fontaine)                  }
                                    }

Decision and Order

Appellant-Applicants Daniel Fontaine and Michael Fontaine (Appellants) appealed from a decision by the District 4 Environmental Commission (District Commission) ruling that Act 250 Rule 34(E) prevented its consideration of Appellants' application for partial findings for a proposed residential development located within the sand extraction areas governed by an existing Act 250 permit. They also appealed from the District Commission's subsequent decision declining to reconsider its decision, and the two appeals were consolidated. Appellants are represented by John W. O'Donnell, Esq.; the Land Use Panel of the Natural Resources Board (NRB) is represented by John H. Hasen, Esq.; and the Agency of Natural Resources (ANR) is represented by Elizabeth Lord, Esq.

Many of the facts necessary to decide the Rule 34(E) issue are undisputed; an evidentiary hearing was held before Merideth Wright, Environmental Judge, to take any remaining evidence relevant to the Rule 34(E) issue. The parties were given the opportunity to submit written memoranda and requests for findings. Upon consideration of the evidence, of the undisputed facts, and of the written memoranda and requests for findings filed by the parties, the Court finds and concludes as follows.

1

Procedural History and Factual Background

Appellants' project property consists of approximately 293.5 acres of land on both sides of Chapman Lane in the Town of Williston, located southerly of the Winooski River and easterly of North Williston Road. Parcel #1, consisting of 135 acres, is located northerly of Chapman Lane and is open land currently in agricultural use. Parcel #2, consisting of 158.5 acres, is located southerly of Chapman Lane and contains the two sand extraction pits and their associated roadway that are the subject of the Act 250 Permit at issue in the present appeal. Parcel #2 contains an open area near two ponds adjoining Chapman Lane, and is otherwise forested, except for the areas within the sand extraction pits. The forested areas of the project property, as well as those of adjoining property, function as a deer wintering area and have been so identified on maps produced by ANR.

In 1991, Appellants[1] applied for and were issued Act 250 Land Use Permit # 4C0893 (the 1991 Permit) for the operation of a sand extraction pit on a portion of that parcel. The Permit authorized Appellants to disturb approximately 42 acres of the parcel, consisting of a 5.5-acre sand extraction area, a 33.9-acre sand extraction area, and a total of 2.5 acres of access roadways serving those areas.

The District Commission's Findings of Fact related to the 1991 Permit state that the property contains "an important deer wintering area" and that Appellants had "agreed to conditions recommended by the Vermont Department of Fish and Wildlife to mitigate the impact" of the sand extraction project on the deer wintering area. As stated in Condition 10 of the 1991 Permit, the permit required that the remaining 98 forested acres of the project parcel be "retained in its natural condition as winter shelter for deer" and that it be managed under a forest management plan,

---

[1]  For ease of reference in discussing the permit history of the project property, the term Appellants includes the present Appellants' predecessors and co-applicants.

to be updated every five years, "specifically outlining [the] protection and enhancement of the hemlock and white pine component" of that forested area. Condition 12 of the 1991 Permit required that sand extraction operations be suspended each winter from December 1 through March 31, except if special circumstances require sand extraction, and then only if the Department of Fish and Wildlife determines that such extraction will not result in any adverse effect on local deer populations. Condition 13 of the Permit required that, "following the extraction of sand resources," the cleared areas are required to be replanted "to a hemlock/white pine cover type" and the road is required to be replanted to grass. The 1991 Permit allowed extraction to occur through October 1, 2016, unless the duration of the permit was extended by the District Commission. Restoration of the first extraction pit began in or about 2005, as discussed in the letter in evidence as Exhibit CC.

The Town Plan, Subdivision Regulations, and Zoning Regulations have each been amended over time since the original 1991 Permit was issued. Appellants did not provide any editions of any of those documents, but did provide evidence in their Exhibit 7 that the municipal regulations require that 75% of the parcel be preserved as open space. They also provided evidence that projects served by a loop road or cul-de-sac, that is, with only single access onto the adjoining street network, are limited to no more than 40 units, but that 50 units had been allowed under the regulations as they existed in 2004. Appellants did not provide evidence of any other specific changes in the municipal regulations over time since the 1991 permit conditions were imposed that would affect their ability to locate development outside the boundaries of the deer wintering area. Appellants also described the phased process for approval of residential development in the Town of Williston, which requires an applicant to obtain allocations of residential dwelling construction many years in advance of the proposed construction dates.

3

In March 2006, the District Commission issued Act 250 Land Use Permit # 4C0893-1 (the Dash-1 Amendment) as an amendment to the 1991 Permit, allowing Appellants to use 36.1 acres of the 152.5-acre neighboring Chapman Parcel[2] for sand pit operations, and to use an existing logging road characterized in Condition 19 of the Dash-1 Amendment as "connect[ing] the existing Fontaine Pit with the proposed pit on the Chapman parcel." Condition 18 of the Dash-1 Amendment required "the remaining 74.6 acres" (presumably of the forested portion of the Chapman parcel) to be "retained in perpetuity as protected deer wintering area." Conditions 20, 21, and 22 are similar to conditions of the 1991 Permit and include requirements addressing winter operations, forest management, and reclamation by replanting the extraction areas "to a hemlock/white pine cover type" and replanting the roadway with grass. Paragraph 38 of the Dash-1 Amendment extended the expiration date of the permit to December 1, 2030, and the reclamation completion date to December 1, 2035, and specifically stated that the permit "shall not expire until the Commission has determined that such reclamation has been completed." It is not clear from the materials provided by the parties whether the extended expiration date applies only to operations on the Chapman parcel or also extended the expiration dates regarding the original Fontaine pit sites; Appellants appear to treat the Fontaine pit sites as continuing to have a 2016 restoration date.

In December 2006 and in 2007, the District Commission issued two additional permit amendments applicable to operations on the Chapman Parcel. Permit # 4C0893-2 (the Dash-2 Amendment) approved a haul road between the two approved pits on the Chapman Parcel. The Dash-2 Amendment reiterated the conditions related to the deer wintering area contained in the Dash-1 Amendment,

---

[2] Based on a notation on the project plans in evidence as Exhibit 9, the Chapman Parcel appears to be located easterly of the southerly project parcel.

4

including the reclamation dates and requirements.  In 2007, the District Commission issued Permit # 4C0893-3 (the Dash-3 Amendment), approving a modification to the haul road to allow the sand extraction operation on the Chapman parcel to comply with an ANR stormwater permit and an ANR wetlands program conditional use determination.  The Dash-3 Amendment reiterated the conditions related to the deer wintering area contained in the Dash-2 Amendment, including the reclamation dates and requirements.

In 2009, Appellants submitted the present application to the District Commission.  Appellants seek partial findings under Act 250 Criterion 8(A) for a proposed 34-lot residential development to be located on the sites of the Fontaine sand extraction areas approved in the 1991 Permit.  An Act 250 application for partial findings under selected Act 250 criteria may be filed pursuant to Act 250 Rule 21.  Under Criterion 8(A), a permit must be denied if a party opposing the application demonstrates that the development "will destroy or significantly imperil necessary wildlife habitat," and any one of the following is met:

(i) the economic, social, cultural, recreational, or other benefit to the public from the development or subdivision will not outweigh the economic, environmental, or recreational loss to the public from the destruction or imperilment of the habitat . . . , or

(ii) all feasible and reasonable means of preventing or lessening the destruction, diminution, or imperilment of the habitat . . . have not been or will not continue to be applied, or

(iii) a reasonably acceptable alternative site is owned or controlled by the applicant which would allow the development or subdivision to fulfill its intended purpose.

10 V.S.A. § 6086(a)(8)(A).

In 2011, ANR updated the deer wintering area maps for Vermont, using a more accurate Geographic Information Systems (GIS) based mapping methodology than the aerial photography methodology used to produce the previous series of maps in the 1970s and early 1980s.  The updated maps added new forested areas

5

and removed areas in which residential development or deforestation had occurred since the previous survey of deer wintering areas. For that reason, Appellants' two sand extraction areas and related roadways were excluded from the 2011 deer wintering area map.

Rule 34(E) Analysis

Appellants applied for partial findings under Act 250 Criterion 8(A) for a proposed residential development on the sites of the Fontaine sand extraction areas governed by the 1991 Permit. Because the 1991 Permit was still in effect on the project property, the District Commission treated it as an application to amend the 1991 Permit's conditions requiring reclamation upon closure of the sand extraction operations.[3] In its decision, the Commission first analyzed, under Act 250 Rule 34(E), whether the reclamation conditions from the 1991 Permit applicable to the Fontaine sand extraction areas could be amended to allow residential development in those areas instead of requiring restoration of the areas to provide deer wintering habitat. Because the District Commission ultimately determined that amendment of the permit conditions was not warranted under its Rule 34(E) analysis, the Commission did not proceed to address the merits of the application for partial findings under Criterion 8(A).

Act 250 Rule 34(E) sets out the analysis to be applied when an application seeks to amend conditions of a final Act 250 permit. Before the merits of an application to amend an Act 250 permit condition can be considered, the Court must first consider whether the applicant meets the standards of the so-called Stowe Club

---

[3] As discussed further below, it appears that, in considering Appellants' application as an application to amend the 1991 Permit conditions, the District Commission did not take into account the fact that the present permit will expire and Act 250 jurisdiction over the tract will cease when and if reclamation is completed.

<u>Highlands</u> balancing test codified as Act 250 Rule 34(E).  See <u>In re Nehemiah Assocs., Inc. (Nehemiah II)</u>, 168 Vt. 288, 293 (1998) (citing <u>In re Stowe Club Highlands</u>, 166 Vt. 33, 37 (1996)) (explaining that the primary issue in an amendment case is "under what circumstances . . . permit conditions may be modified").  The Rule 34(E) analysis proceeds in three steps.

All that is before the Court in the Statement of Questions is whether Appellants' Act 250 Rule 21 application for partial consideration of their future residential project meets the criteria of Act 250 Rule 34(E).  Even though, strictly speaking, Appellants' application that was before the District Commission does not seek to amend any existing permit conditions, it was treated as such by the District Commission because the existing permit had not yet expired.  In this context—an application for a future project on property covered by an existing but limited-term permit—the Rule 34(E) analysis does also serve as a useful method for balancing considerations of flexibility and finality in the sequencing of Appellants' application.  That is, in the present case the Court will use the <u>Stowe Club Highlands</u> analysis, as codified in Act 250 Rule 34(E) to determine whether flexibility outweighs finality to allow Appellants to submit their application for partial consideration under Act 250 Rule 21, before they seek approval, if later necessary, to amend the 1991 Permit conditions.

<u>Whether Issue was Critical</u>

First, the Court must determine whether any permit condition that an applicant seeks to amend "was included to resolve an issue critical to the issuance of the permit."  Act 250 Rule 34(E)(1).  That is, the limitations imposed by Rule 34(E) only restrict the amendment of final Act 250 permits if applicants seek to amend conditions that were intended to resolve issues critical to the District Commission's initial decision to issue the permit.  <u>In re Judge Development Corp.</u>, No 189-9-05

7

Vtec, slip op. at 7 (Vt. Envtl. Ct. Aug. 7, 2006) (Wright, J.); see also Act 250 Rule 34(E)(1)(a).

As fully discussed in the Findings of Fact, Conclusions of Law and Order of the 1991 Permit, and as is apparent from the 1991 letter from ANR's Department of Fish and Wildlife in evidence as Exhibit BB, the winter operation, deeryard preservation, and ultimate reclamation conditions at issue were critical to the issuance of the sand extraction permit. The Department's support for the permit under Criterion 8, and the District Commission's issuance of the permit under Criterion 8, depended on the conditions at issue in this appeal.

### Whether Application Seeks to Relitigate or Undermine

If the condition that an applicant seeks to amend was included to resolve an issue critical to the permit's issuance, the Court must next determine whether the applicant is seeking to relitigate the condition or to undermine the purpose or intent of the permit condition. Act 250 Rule 34(E)(2).

In the present case, Appellants are not seeking to relitigate the permit conditions as to the sand extraction project or to undermine the purpose or intent of those conditions. Appellants do not contest either the existence of the extensive deer wintering areas on the project property, nor the importance of the permit conditions to preserving and restoring the deer wintering capacity of the overall property during the lifetime of the sand extraction permit.

Rather, Appellants seek an opportunity to present evidence to the District Commission that they can provide an approvable extent of protected deer wintering area in the Town of Williston, compared to that protected in the sand extraction permit series, through the design and conditions of their proposed residential development. They essentially are asking to have their proposed residential development on the Fontaine property analyzed as of 2016, that is, as if the sand

extraction areas had been restored and the sand extraction permit had expired.

Balancing Flexibility & Finality

If an applicant is seeking to amend a condition critical to the permit's issuance but is not merely seeking to relitigate the condition or undermine the permit's intent, then the Court must balance the need for flexibility against the need for finality to determine whether the application to amend the permit condition may be considered. Act 250 Rule 34(E)(3).

In analyzing the need for flexibility with regard to a permit condition, the Court must consider the following factors:

a) changes in facts, law, or regulations beyond the permittee's control;
b) changes in technology, construction, or operations which necessitate the need for the amendment;
c) other factors including innovative or alternative design which provide for a more efficient or effective means to mitigate the impact addressed by the permit condition;
d) other important policy considerations, including the proposed amendment's furtherance of the goals and objectives of duly adopted municipal plans; [and]
e) manifest error on the part of the district commission; the environmental board; or the environmental court in the issuance of the permit condition[.]

Act 250 Rule 34(E)(4)(a)–(e). The changes adduced in support of the need for flexibility must be relevant to the conditions at issue, see In re: Dr. Anthony Lapinsky and Dr. Colleen Smith, Nos. 5L1018-4, 5L0426-9 EB, Findings of Fact, Conclusions of Law and Order at 19 (Vt. Envtl. Bd. Oct. 3, 2003), and must be a "driving force" behind the proposed amendment. See In re: Town and Country Honda, No. 5W0773-2 EB, Findings of Fact, Conclusions of Law and Order at 17 (Vt. Envtl. Bd. Feb. 15, 2001).

Although the District Commission treated Appellants' application as

effectively seeking amendments to the winter operation and forest management conditions of the 1991 Permit, the application does not seek to change those conditions during the pendency of the sand extraction operations. Nor does it seek amendment of conditions permanently applicable to a completed project, where neighbors or residents of the completed project have a reliance interest in the continued applicability and enforceability of the conditions. Strictly speaking, the present application does not even seek to change or amend the reclamation condition as it pertains to the sand extraction project. Rather, Appellants seek a very preliminary ruling as to whether a new residential project, taken on its own merits, can be designed to satisfy Criterion 8(A).

In considering how to balance flexibility with finality, it is important to recognize that such balancing of finality with flexibility operates differently in the context of permits with an indefinite duration than it does with respect to permits, such as the present one, that will actually expire so that Act 250 jurisdiction will cease after reclamation has occurred. See 10 V.S.A. 6090(b) (distinguishing Act 250 permits that have a limited duration from those with indefinite duration); In re Huntley, 2004 VT 115, ¶ 1, 177 Vt. 596 (mem.) ("[W]hen a permit expires . . . the land is no longer subject to Act 250 jurisdiction absent some activity to trigger the statute's application."). It would be extremely wasteful of public and private resources to require an applicant to reclaim an area by planting and growing trees, only to later allow the same area to be cut and developed immediately afterwards, if it is capable of qualifying for such development under the applicable municipal and state regulations, including Act 250.

The dilemma posed with the current application is simply one of timing. If a prospective developer of land to which Act 250 jurisdiction has not yet attached is entitled to apply for a partial findings ruling some years before investing in complete design plans for a project, there must be a way for a prospective developer

10

of land subject to a finite-term permit to obtain the same sort of ruling in advance of the permit's expiration.

This dilemma only occurs in the present case <u>because</u> the 1991 Permit will expire, at that time leaving the property without any conditions unless and until a new project is proposed and a new permit is ruled on. See <u>In re Huntley</u>, 2004 VT 115, ¶ 1. Under the analysis developed in <u>Huntley</u>, once extraction on Appellants' property has ceased and five years of reclamation growth has occurred in compliance with the permit requirements, Appellants will be free to apply for an Act 250 permit for their residential project without regard to the conditions of the expired permit. Under Act 250 Rule 21, they could then seek a ruling as to whether the proposed project complies with Act 250 Criterion 8(A). If Appellants would have the opportunity to have their application for partial findings considered on its merits after the current permit has expired, then the question before the Court in the present case is whether flexibility outweighs finality to allow Appellants to obtain that ruling in advance of the permit's expiration.

Turning to the flexibility factors in Act 250 Rule 34(E)(4), the present case does not involve any error on the part of the District Commission in imposing the conditions in the original permit. See Act 250 Rule 34(E)(4)(e). Nor does it involve an alternative design to more efficiently or effectively mitigate the impact on the deer wintering area, as the proposed residential development will involve year-round effects in an area that is protected during the winter months under the existing permit. See Act 250 Rule 34(E)(4)(c). However, this factor shifts in favor of flexibility after the expiration of the existing permit, as the deer wintering area on the property will then have no protection unless further conditions are imposed in a future permit. Similarly, after the expiration of the existing permit, policy considerations regarding housing and affordable housing in the municipal plan may come into play, together with the state and local policies regarding wildlife habitat.

11

See Act 250 Rule 34(E)(4)(d).

The changes in coverage of the ANR Deer Wintering Area maps—those that exclude the sand extraction areas from the mapped coverage—are not a factual change beyond the permittees' control. See Act 250 Rule 34(E)(4)(a). Rather, those changes resulted from activity controlled by the permittees; those changes were the very changes allowed under the permit and that involve the areas subject to restoration as deer wintering area. Nor is the improved GIS mapping technology a technological change requiring an amendment to the existing permit, because improvements in mapping technology are not the "driving force" behind the amendment. Town and Country Honda, No. 5W0773-2 EB, Findings of Fact, Conclusions of Law and Order at 17; see Act 250 Rule 34(E)(4)(b).

Changes in the municipal regulations applicable to the potential for housing development on the property are not a regulatory change beyond the permittees' control with regard to the sand extraction permit conditions. See Act 250 Rule 34(E)(4)(a). On the other hand, such regulatory constraints would be relevant to the analysis of the merits of a new application under Criterion 8(A)(iii) regarding reasonably acceptable alternatives. See 10 V.S.A. § 6086(a)(8)(A)(iii).

However, one change in the law since the 1991 Permit was issued does support the need for flexibility, at least in allowing the consideration of a project designed in anticipation of the sand extraction permit's expiration. When the 1991 Permit conditions were imposed, Act 250 jurisdiction was understood to continue to attach to property containing closed and reclaimed mineral extraction sites. After the Huntley decision in 2004, Act 250 jurisdiction is understood to cease once the extraction area is closed and properly reclaimed in accordance with the permit conditions governing the site. 2004 VT 115, ¶ 1; cf. In re Hamm Mine Act 250 Jurisdiction, 2009 VT 88, ¶¶ 17–18 186 Vt. 590 (concluding that Act 250 jurisdiction does not cease when an applicant has not fully complied with permit conditions).

12

This change in the decisional law was beyond the permittee's control and affects Appellants' prospective plans for the project property. See Act 250 Rule 34(E)(4)(a).

Having determined that there are factors in favor of flexibility, the Court must now balance these factors against the need for finality in the permit conditions. The Court balances the need for flexibility against the need for finality to insure that the initial permitting proceedings are not "merely a prologue to continued applications for permit amendments." Stowe Club Highlands, 166 Vt. at 39. In making that determination, the Court considers, among other things, "the degree of reliance on prior permit conditions or material representations of the applicant in prior proceeding(s) by the district commission, the environmental board, the environmental court, parties, or any other person who has a particularized interest protected by [Act 250] that may be affected by the proposed amendment." Act 250 Rule 34(E)(4)(f). Thus, even if some of the factors support flexibility, if those factors reflect a change that was "reasonably foreseeable at the time of the permit application," or if parties or other interested persons "reasonably rel[ied] on the permit conditions in making decisions," consideration of an application to amend the permit may not be justified. Nehemiah II, 168 Vt. at 294.

The balancing of flexibility against finality therefore must be analyzed differently with respect to the existing sand extraction permit than with respect to Appellants' application for partial findings on whether their proposed residential development satisfies Act 250 Criterion 8(A), because the sand extraction permit is designed to expire. If Appellants were applying to change the contested conditions of the sand extraction permit, in and of itself, and without first obtaining approval of an alternate future project on the property, finality would outweigh flexibility. ANR has relied on the contested conditions in its efforts to protect deer wintering habitat during the sand extraction use of the property and until the permit expires.

However, Appellants are not now asking to change the 1991 Permit conditions; instead, they are seeking partial findings as to whether a different proposed project could be approved after the expiration of the existing sand extraction permit. For the reasons discussed above, in particular because Act 250 jurisdiction over the project property will cease after the permit expires and once reclamation is completed, the Court concludes that flexibility outweighs finality to allow Appellants to submit their application for partial consideration of their future residential project under Act 250 Rule 21. Given the long planning horizon required for residential projects in the Town of Williston under its municipal regulations, it is appropriate for the District Commission to consider, in advance of the existing permit's expiration date, the merits of whether Appellants' proposed residential project could be designed to satisfy Act 250 Criterion 8(A).

This decision does not in any way address the merits of Appellants' residential project application under Criterion 8(A) and Act 250 Rule 21, because the merits of the application are for the District 4 Environmental Commission to consider in the first instance.[4]

---

[4] The merits of the application must of course be analyzed as if the sand extraction areas had been fully restored as required in the existing permit; otherwise, it <u>would</u> be necessary for Appellants to apply to change the restoration conditions of the existing permit, which they have not yet done. It will be up to them to apply to change those conditions if and only if they obtain approval of their residential project within the areas slated for restoration. At that time, the District Commission would have to determine whether the approved residential project warrants changing the restoration conditions under Act 250 Rule 34(E). However, as it is possible that the application will be disapproved under Criterion 8(A), or that the project's location or scope may be changed during the course of the application process, it is simply premature for the Commission to consider whether the duration or the restoration conditions of the existing permit should be changed, unless and until it rules on whether the application is approvable under Criterion 8(A).

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the District 4 Environmental Commission's Act 250 Rule 34(E) ruling is REVERSED, concluding this appeal. The District 4 Environmental Commission shall proceed to consider the merits of Appellant-Applicants' application for partial findings as to Criterion 8(A) for the proposed residential development, consistent with this decision.

Done at Berlin, Vermont, this 20th day of December, 2011.

_____

Merideth Wright
Environmental Judge