2004 VT 30

**In re Real AUDET d/b/a Joe Audet Auto and Truck Sales, Inc. and Joe Audet Auto and Truck Sales, Inc. (John and Dorothy Michell, Appellants)**

[850 A.2d 1000]

No. 03-060

¶ 1. April 1, 2004. Appellants John and Dorothy Mitchell appeal a declaratory ruling by the environmental board that appellee Real Audet does not need to obtain an Act 250 permit for his vehicle salvage business in the Town of Worcester because of his temporary but now abandoned use of a separate parcel of land outside of town. We affirm.

¶ 2. Audet repairs and sells cars and trucks. His business is located on two contiguous tracts of land near the town center. In January 2001, Audet purchased a third tract on Hersey Road, about three-tenths of a mile away from his main business. The Mitchells also live on Hersey Road, and their property surrounds Audet's property on three sides. Audet's Hersey Road tract, named "Parcel 3" in the litigation before the environmental board, has a dilapidated house which was condemned in 1989 after raw sewage was discovered flowing into nearby surface waters. Audet initially proposed to build a new house for his daughter on Parcel 3 using the old sewage system. The Mitchells opposed the

plan in hearings before the Worcester Selectboard, and in later litigation. In that case, the selectboard ruled that the property did not have a grandfathered septic system and, therefore, prohibited development until Audet constructed a compliant sewage disposal system.

¶ 3. Shortly thereafter, Audet cleared brush from Parcel 3 and began using the cleared area and other parts of Parcel 3 to store junked cars, a large pile of used tires, automotive debris, a company truck and a flatbed trailer. Some of the vehicles were owned by the business or business clients, and some by family and friends. In the process of moving the vehicles, Audet caused his company pickup trucks and tow-trucks to drive to the circle turn at the terminus of Hersey Road directly in front of the Mitchells' house, where they would sometimes intentionally spin their wheels in the gravel. In August, Audet told the Mitchells he was going to build a garage on Parcel 3 in two weeks, that he was going to continue to be a "bad neighbor," and that there was going to be a lot more traffic on Hersey Road. After receiving a permit from the Worcester Selectboard in September, Audet graded, filled and graveled portions of Parcel 3.

¶ 4. In response to the impending construction, the Mitchells requested a jurisdictional opinion from the District 5 Environmental Commission as to whether Audet needed an Act 250 permit to use Parcel 3 for his business. The environmental commission staff determined, on February 5, 2002, that Act 250 jurisdiction was triggered under 10 V.S.A. § 6001(3)(A)(ii) because (1) the combined size of all three parcels owned or rented by Audet for his business exceeded one acre, (2) all three parcels were within five miles of each other, and (3) Audet had improved Parcel 3 to facilitate his business uses, and had in fact used the improved areas on Parcel 3 to store vehicles associated with his business.

¶ 5. Shortly thereafter, Audet ceased using Parcel 3 in any way connected with his business. Then Audet petitioned the environmental board for a declaratory ruling that Parcel 3 was not part of his business and, therefore, Act 250 jurisdiction did not apply to either Parcel 3 or his main business enterprise in the village center. Following a site visit, a three-member panel of the environmental board issued a proposed 2-1 decision concluding that Audet had used Parcel 3 to store vehicles, which was a commercial purpose, and therefore needed to obtain an Act 250 permit for his combined business operations. Audet appealed the proposed decision to the full board. After a de novo hearing, the board reversed the panel decision and, in a 5-2 ruling, determined that no Act 250 permit was required. This appeal followed.

¶ 6. Act 250 requires a state land use permit prior to the commencement of development. 10 V.S.A. § 6081(a). In a municipality that has not adopted permanent zoning and subdivision bylaws, such as the Town of Worcester, development is defined as "[t]he construction of improvements for commercial or industrial purposes on more than one acre of land." 10 V.S.A. § 6001(3)(A)(ii). Under environmental board rules, "the entire tract or tracts of *involved land* owned or controlled by a person" must be used in determining the acreage of a project. Environmental Board Rules (hereinafter EBR) § 2(A)(1)(b), 6 Code of Vermont Rules 12 003 001-5-6 (2003) (emphasis added). The rules provide four methods for counting involved land, three of which are relevant here. See EBR § 2(F)(1), 6 Code of Vermont Rules 12 003 001-11. First, Rule 2(F)(1) counts the "entire tract or tracts of land, within a radius of five miles, upon which the construction of improvements for commercial or business purposes will occur." *Id.* Second, the rule adds to that figure "any other tract, within a radius of five miles, to be used as part of the project," or, third, any other

tract "where there is a relationship to the tract or tracts upon which the construction of improvements will occur such that there is a demonstrable likelihood that the impact on the values sought to be protected by Act 250 will be substantially affected by reason of that relationship."[1] *Id.*

¶ 7. It is undisputed that Audet recently constructed improvements for commercial purposes at his main business location in the village center. That enterprise, however, covers only eight-tenths of an acre. Thus, Act 250 would not apply to his business unless Parcel 3, which is a quarter of an acre, qualifies as involved land under one of the three counting methods prescribed by Rule 2(F)(1). The environmental board's final decision held, under all three methods, that Parcel 3 was not involved with Audet's main business. The Mitchells appeal the board's findings of fact and conclusions of law only regarding its determination under the second method that Parcel 3 was not "used as part of the project."

¶ 8. On this point, the board specifically found that "Audet has stored motor vehicles, incidental to his business, on a temporary basis, on Parcel 3." Nonetheless, it concluded as a matter of law that such use was insufficient to make Parcel 3 part of the project: "while there may have been some vehicle storage on Parcel 3 . . . it was at most only temporary, intermittent, incidental and peripheral to Audet's Worcester village business enterprise . . . and thus did not rise to the level that caused the Board to find that jurisdiction has attached." The Mitchells argue that

---

[1] This and other relevant statutes and regulations have been revised since this matter commenced. None of the revisions involved any substantive changes, but rather were organizational only. Thus, for ease of use, in this opinion we cite to the current statutes and regulations.

the board erred because: (1) the conclusion that Audet's use was "temporary, intermittent, incidental and peripheral" is not supported by the board's findings or the record evidence, and (2) the board's ad hoc creation of a "de minimis" exception to Rule 2(F)(1) violates the Vermont Administrative Procedure Act and the Mitchells' due process rights.

¶ 9. "We give deference to the Environmental Board's interpretations of Act 250 and its own rules, and to the Board's specialized knowledge in the environmental field. Absent compelling indications of error, we will sustain its interpretations on appeal." *In re Wal\*Mart Stores, Inc.*, 167 Vt. 75, 79, 702 A.2d 397, 400 (1997) (internal citation omitted). "Our deferential level of review, however, does not equate with mere judicial passivity in determining the propriety of Board interpretations of its own rules. Rather, as with all legislative schemes, we are guided by the intent of the Legislature, as evidenced by the statutes themselves." *Id.* at 80, 702 A.2d at 400 (internal quotations and citations omitted).

¶ 10. We agree with the Mitchells that if the environmental board created a de minimis exception it was error. See *Conservation Law Found. v. Burke*, 162 Vt. 115, 121, 645 A.2d 495, 499 (1993) (if an administrative agency wishes to include a de minimis exception to its regulations, it must do so explicitly in rulemaking process). Nonetheless, we affirm the board's decision on the ground that Audet has abandoned his business use of Parcel 3 and therefore the board could decide not to count it as part of his main business project. See *Sorge v. State*, 171 Vt. 171, 174 n.\*, 762 A.2d 816, 818 n.\* (2000) (Court may affirm despite improper rationale if correct result was reached). Given this conclusion, we do not reach the Mitchells' arguments regarding the degree of use that occurred.

¶ 11. Under Act 250 and environmental board rules, any construction activity, no

matter how minute, triggers Act 250 jurisdiction. See *In re Rusin*, 162 Vt. 185, 191, 643 A.2d 1209, 1212 (1994) ("10 V.S.A. § 6081(a) mandates a land-use permit before commencement of *any* construction on a development."); EBR § 2(D), 6 Code of Vermont Rules 12 003 001-10 ("'Construction of improvements' means any physical action on a project site which initiates development for any purpose enumerated in Rule 2(A)."). The issue here is whether the same strict rule applies when the development on involved land consists merely of a change of use with no construction. As put by the board in its response to the Mitchells' motion to alter:

> [A]ny construction is sufficient to trigger jurisdiction. The question here is whether the Board must follow a similar path when deciding the question of how much business use is necessary to trigger jurisdiction. Is *any* business use enough to bring a parcel within the ambit of "involved land," or does it have to rise to some level before jurisdiction is triggered?

The board decided upon the latter, but did not define what threshold level of use would trigger Act 250 jurisdiction. Instead it held only that Audet's "temporary, intermittent, incidental and peripheral" use was insufficient in this case. In addition, the board noted, the conclusion that Parcel 3 was not used as part of the project was reinforced by evidence showing that Audet had never made a "conscious decision" to use Parcel 3 for business purposes, but rather had stored vehicles there only to annoy or harass the Mitchells.

¶ 12. For different reasons, we agree with the board's decision not to apply Act 250 jurisdiction. Under the unique facts and circumstances of this case, we conclude that Audet's now abandoned use of Parcel 3 did not effectuate a change in land use and, therefore, does not require state land use review. In reaching this conclusion we look to the intent of the Legislature in passing Act 250, as evidenced by the statutes themselves. *Wal\*Mart Stores*, 167 Vt. at 79-80, 702 A.2d at 400-01.

¶ 13. The Legislature intended Act 250 to protect Vermont's lands and environment by requiring statewide review of "large-scale changes in land utilization." *Comm. To Save Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc.*, 137 Vt. 142, 151, 400 A.2d 1015, 1020 (1979); see also *In re Pilgrim P'ship*, 153 Vt. 594, 596, 572 A.2d 909, 911 (1990) (one purpose of Act 250 is to insure that Vermont's lands and environment are devoted to uses which are not detrimental to the public welfare and interests). Generally, as noted by the environmental board dissenters here, once a change of statewide impact occurs to land, Act 250 jurisdiction attaches and it cannot be undone by later events such as a cessation of the development activity. This case, however, raises a separate question: where a change in land utilization involves a change in use but no construction, physical change to the land, or other lasting impact, whether ceasing and abandoning the change of use may, if supported by sufficient evidence, negate the change in land utilization and thus the need for Act 250 review.

¶ 14. Such an abandonment is exactly what happened here. By storing on Parcel 3 motor vehicles and automotive parts associated with his business, Audet effectively began using the tract as part of his village business enterprise. Technically, at that point development jurisdiction attached. See EBR § 2(F)(1) (involved lands include any other tract, within a radius of five miles, to be used as part of the project). When faced with the prospect of having to obtain an Act 250 permit as a result of this expansion, however, Audet changed his plans and ceased the use. We conclude that the environ-

mental board could find that no further Act 250 jurisdiction existed at that point, so long as Audet's change of plans was made in good faith and occurred without any sort of construction, physical change to the land or other ongoing impact that would require Act 250 review. To hold otherwise would mean that once the use but not the physical condition of land changes, for the purposes of Act 250 jurisdiction that change is considered permanent and irreversible regardless of the owner's ability and desire not to effect such a change. Such an interpretation — effectively forcing the land use change and its concomitant impacts to continue permanently — would be absurd given that the Legislature's purpose in enacting Act 250 was to protect and conserve the lands and environment of the state from the impacts of unplanned and uncontrolled changes in land use. See 1969, No. 250 (Adj. Sess.), § 1 (findings and declarations of intent); *Braun v. Bd. of Dental Exam'rs*, 167 Vt. 110, 117, 702 A.2d 124, 128 (1997) (statutes construed with presumption "that the Legislature does not intend an interpretation that would lead to absurd or irrational consequences").

¶ 15. We note that this is not a new interpretation of Act 250. Indeed, environmental board rules provide for exactly such an abandonment in the case of a subdivision project. See EBR § 2(B)(3), 6 Code of Vermont Rules 12 003 001-10 (Act 250 jurisdiction over subdivisions shall cease to be found if a project is retracted or revised below jurisdictional levels any time prior to the construction of improvements); see also 10 V.S.A. § 6091(b) (nonuse of an Act 250 permit after three years constitutes an abandonment of the development).

¶ 16. Here, Audet would meet the test set out by EBR § 2(B)(3). The record shows that although Audet used Parcel 3 briefly for vehicle storage, he abandoned the use almost two years ago, did not construct improvements on the land for business purposes, left no lasting impression on the landscape, and has no plans to reenter Parcel 3 for reasons related to his vehicle salvage business.[2] Thus, there is no historic impact or current or planned use of Parcel 3 that is "part of the [vehicle sales and repair] project" for the environmental commission to review. Cf. *In re Agency of Admin., State Bldgs. Div.*, 141 Vt. 68, 79, 444 A.2d 1349, 1354 (1982) (Act 250 development jurisdiction triggered only when a project "has achieved such finality of design that construction can be said to be ready to commence"). The only effect of a jurisdictional ruling at this point would be to make Audet go through Act 250 review for his business enterprise in the village center. Given that the village business occupies less than one acre, and has no connection with any other parcel, such review would be inconsistent with the purposes of the Act. Thus, so long as Parcel 3 remains uninvolved land, Act 250 jurisdiction does not attach to Audet's business.

*Affirmed.*

---

[2] It is undisputed that Audet cleared, filled and graded portions of Parcel 3, and later stored vehicles on the improved area. The environmental board, however, found that these improvements were not related to Audet's business, but rather were done to enable possible removal of the condemned house or for Audet's express intent of building a new residential unit on the lot. The Mitchells did not appeal this finding, and it is therefore final.