**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

|  |  |  |
|---|---|---|
| | } | |
| In re Lake Champlain Bluegrass Festival | } | Docket No. 204-11-10 Vtec |
| Jurisdictional Opinion (#6-007; recon.) | } | (Appeal from Dist. 6 Comm.) |
| | } | |

## Decision on the Merits

The sole legal question presented in this appeal is whether the operators of the Lake Champlain Bluegrass Festival ("the Festival"), a bluegrass music festival that has operated for up to four days per year for the previous nine years, should be required to obtain a state land use permit, commonly referred to as an Act 250 permit. When the District Coordinator ("the District Coordinator") for the District 6 Environmental Commission ("the District Commission") concluded that Act 250 jurisdiction did not arise as a result of the Festival operations or related improvements, adjoining property owners Rene R. Prairie and Louise Prairie ("Appellants") appealed the District Coordinator's determination to this Court. When the parties were unable to reach a voluntary resolution of their dispute, despite their efforts at compromise, the Court conducted a site visit on the property that hosts the Festival and thereafter conducted a de novo merits hearing at the Grand Isle Courthouse in North Hero, Vermont.

Appearing at the site visit and trial was Mr. Prairie, joined by Appellants' attorney, Joseph F. Cahill, Jr., Esq. Steven L. Palmer, registered agent for Hay Bale Entertainment, LLC ("Hay Bale"), which owns, organizes, and supervises the Festival each year, also attended, together with Hay Bale's attorney, Liam L. Murphy, Esq. Loren T. Palmer, registered agent for Windmill Bay Farms, LLC, the owner of the property upon which the Festival is conducted each year, also attended the site visit and trial. The Land Use Panel of the Vermont Natural Resources Board ("the Panel") appeared as an Interested Person in this appeal; its General Counsel, John H. Hasen, Esq., participated in the site visit and trial.

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

1

## Findings of Fact

1.      Steven L. Palmer, registered agent for Hay Bale, conceived of the Festival prior to 2002.  Beginning in August, 2002, the Festival has operated for a period of one to four days during August of each year.  In its earlier years, the Festival operated for only one day; in its later years, the Festival has operated for up to four days, beginning on a Thursday and ending on a Sunday.

2.      Over the last nine years, Hay Bale has entered into a written lease each summer for the use of a portion of an agricultural field for the Festival operations.  The leased land is owned by Windmill Bay Farms, LLC ("Windmill"), the registered agent of which is Loren T. Palmer, Steven L. Palmer's father.

3.      The parcel of land which includes the area leased by Windmill to Hay Bale totals 265 acres.  Much of the Windmill land consists of agricultural fields and some wooded areas; the portion of land leased to Hay Bale contains 30 to 40 acres and abuts the northern boundary of U.S. Route 2 in the Town of Alburgh, Vermont.  The entire Windmill parcel and neighboring parcels are depicted on an Orthophoto Plan admitted as Exhibit A.  The portion of the Windmill parcel leased and used for the Festival is depicted on Exhibit A as the "Festival Area."

4.      Appellants live on property approximately five miles from the Festival Area.  They also own a separate undeveloped parcel of land along a portion of the northern border of the Windmill parcel which they use for hunting and other recreational activities.  Appellants generally allege that the Festival interferes with their use and enjoyment of their undeveloped abutting property.

5.      In recent years, the Festival has attracted 1,200 or more attendees.  The most recent Festival occurred in August, 2010[1] and was conducted over three days.

6.      The Festival Area contains mostly open fields that are used for growing hay and other agricultural purposes during all other days of the year.  The Festival organizers and attendees use the internal farm field roadways within the Festival Area for access to the Festival staging areas.  No roadways were constructed or improved by the Festival organizers.

7.      The Festival organizers have constructed or installed some improvements on the Festival Area.  These improvements, mostly installed in 2006, include the following:

---

[1]  The Festival organizers suspended the Festival event planned for 2011, due to the pending legal challenge to its operation without an Act 250 permit.

a) a sign at the access way entrance to the Festival Area, supported by two wooden posts and standing about three feet high;
b) a movable stage that is constructed on a hay wagon-type platform with wheels and stored on the edge of a field when the Festival is not in operation;
c) three separate electrical connection junctions, housed in wooden boxes, sitting about three feet off the ground and supported by two wooden posts;
d) one or more portable electric generators and a fuel storage tank;[2]
e) electrical extension lines, buried several inches underground, that supply electricity to the three electrical junction boxes; and
f) three poles, each about twenty feet high and upon which temporary lighting is attached.

8. All of these improvements are only used during the one- to four-day period of the Festival. Each year, the portable generators and all lights are removed from the Festival Area and stored off site. At the end of the Festival, the Festival Area is returned to agricultural use.

9. After Appellants alleged that the Festival activities triggered Act 250 jurisdiction, the Festival organizers permanently removed the sign and the posts supporting it. Several of the other posts were either removed or cut to a height of about three feet.

10. During the Festival each year, the Town of Alburgh Fire Department sells meals and other food and drink as a fund-raising effort for that Department. The Grand Isle County Sheriff's Department provides traffic control and safety officers for the Festival, at a cost charged to and paid by Hay Bale. The Festival organizers also provide temporary porta-potties and other sanitary facilities for the Festival attendees. All waste is collected and removed from the site; no waste flows from the site to surrounding properties, streams, or groundwater.

11. Festival attendees may purchase tickets for each Festival prior to or during the event weekend. In return for their payment, attendees are allowed into the Festival Area to listen to music and camp; they are permitted to bring tents, campers, or recreational vehicles onto the site. There are no electrical, water, or waste disposal hook-ups offered or permitted on the site.

12. There is no running water provided on the site during the Festival event.

13. Steven Palmer, representing Hay Bale, communicates with state and municipal officials before each yearly Festival event to advise of Hay Bale's planned activities and

---

[2] The fuel storage tank is principally used for Windmill's non-Festival agricultural activities. It was unclear, from the evidence presented at trial, whether fuel from this storage tank is used to keep the Festival generators running during the Festival. The tank remains on the property throughout the year.

to determine what Hay Bale needs to do in anticipation of the Festival each year. Mr. Palmer testified credibly that he secured all permits required by state and municipal officials and that in prior year he was advised by John Wakefield, Natural Resources Board Permit Compliance Officer, that an Act 250 permit was not required for the planned Festival activities.[3]

14. No Agency of Natural Resources permits are required for the Festival event.

15. There are no residences in the immediate area of the Festival. The closest residence appears to be almost one mile away. Mr. Palmer credibly testified that he and those he employs (including deputies from the Grand Isle County Sheriff's Department) have never received a complaint about the Festival activities.

16. Mr. Prairie, one of the appellants in this appeal, is an experienced business person who has previously been required to secure an Act 250 permit for certain land use activities. He stated at trial that he wishes to make sure that others, including Mr. Palmer, are required to secure an Act 250 permit when the law requires, since he was required to do so.

17. Sometime prior to August 3, 2010, Appellants complained to Mr. Wakefield, the Permit Compliance Officer. Mr. Wakefield thereafter requested that the District Coordinator render a determination, based upon the facts alleged by Appellants, as to whether the Festival activities gave rise to Act 250 jurisdiction and the need to obtain an Act 250 permit.

18. On August 3, 2010, the District Coordinator issued his determination on a document entitled "Project Review Sheet," a copy of which was admitted into evidence at trial as Appellants' Exhibit 13. By this Project Review Sheet, the District Coordinator gave notice of his determination that the Festival activities, as then described to him, required an Act 250 permit.

19. The District Coordinator forwarded a copy of his August 3, 2010 Project Review Sheet to Windmill, as the owner of the property that he had determined required an Act 250 permit.

20. At the request of Hay Bale, and after receiving further information concerning the Festival activities and improvements, the District Coordinator, on October 11, 2010, issued a reconsideration of his prior jurisdictional determination. By this

---

[3] While Mr. Palmer's credible trial testimony was uncontradicted with regard to requesting and receiving this permit determination from the Permit Compliance Officer, there was no evidence offered at trial that Mr. Palmer sought a jurisdictional opinion from the District Coordinator prior to the opinions that are detailed in the District Coordinator's determinations discussed in ¶¶ 18 and 20, below.

4

October 11, 2010 reconsideration letter, the District Coordinator gave notice that he had now concluded, based upon all facts presented to him, that the Festival activities and improvements were of such a minor nature as to be entitled to an exemption from Act 250 jurisdiction.

21.     Appellants thereafter filed a timely appeal of the District Coordinator's October 11, 2010 reconsideration.

## Conclusions of Law

Act 250, codified at 10 V.S.A. §§ 6001 through 6093, was enacted over forty years ago "to protect Vermont's lands and environment by requiring statewide review of 'large-scale changes to land utilization.'" In re Audet, 2004 VT 30, ¶13, 176 Vt. 617 (mem.) (quoting Comm. to Save Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc., 137 Vt. 142, 151 (1979)); see also In re Pilgrim P'ship, 153 Vt. 594, 596 (1990). Where land development is proposed or has occurred, the responsible party is required to obtain an Act 250 permit. 10 V.S.A. § 6081(a). Thus, the threshold question presented in any initial analysis of a land use project is whether the project fits the statutory definition of "development" and thereby triggers the need for the party undertaking the project to obtain an Act 250 permit.

The term "development" is defined in 10 V.S.A. § 6001(3)(A) as an activity falling within any one of eight descriptions. The description and definition most applicable to the Questions posed by Appellants here is found in subsection (3)(A)(ii), which states that development includes "[t]he construction of improvements for commercial or industrial purposes on more than one acre of land within a municipality that has not adopted permanent zoning and subdivision bylaws."[4] Id. Act 250 Rule (2)(C)(3) defines "construction of improvements" as "any physical action on a project site which initiates development," subject to certain enumerated exceptions.

In the appeal now before us, the parties do not dispute that the Festival organizers have installed some improvements on the Windmill property; the parties appear to agree that the Festival organizers have completed the improvements and associated activities listed above in our Factual Findings ¶¶ 7–12. The parties' legal dispute instead centers on whether these improvements and associated activities are so minor in nature as to fall under a statutory or rule exception (e.g., one of the

---

[4]  No party to this appeal challenged the District Coordinator's determination that the Town of Alburgh had not, as of the date of the initial jurisdictional request, adopted both zoning and subdivision bylaws, thereby making the provisions of 10 V.S.A. § 6001(3)(A)(ii) applicable.

exceptions in Act 250 Rule (2)(C)(3)), and allow the Festival organizers to avoid the need to obtain an Act 250 permit. For the reasons detailed below, we conclude that while the listed improvements and associated activities were constructed and undertaken for the Festival, they are so minor in nature that they are exempt from the definition of "development" under 10 V.S.A § 6001(3)(A). Since no development has occurred, the Festival organizers are not obligated to obtain an Act 250 permit.

## I. **The Import of In re Audet**

The question of whether Act 250 jurisdiction attaches to a land development has given rise to significant administrative efforts and litigation. The Vermont Supreme Court's determination in Audet marks a relatively recent analysis and is often cited for the general proposition that "any construction activity, no matter how minute, triggers Act 250 jurisdiction." Audet, 2004 VT 30, ¶ 11 ("10 V.S.A. § 6081(a) mandates a land use permit before commencement of any construction on a development.") (citing In re Rusin, 162 Vt. 185, 191 (1994)).

In Audet, the target of the jurisdictional inquiry were the activities of Mr. Real Audet, a car repairman and used car salesman. In the course of that dispute, Mr. Audet stated that he had every intention of being, in his own words, a "bad neighbor." 2004 VT 30, ¶ 3. In direct disregard of the concerns his neighbors expressed when his plans to rehabilitate a condemned residence on property he had recently purchased failed, he began to use the property to "store junked cars, a large pile of used tires, automotive debris, a company truck and a flatbed trailer." Id. ¶¶ 2-3. In order to make the parcel available for these uses, he "cleared brush" and "graded, filled and graveled portions of" the property. Id. ¶3.

Based upon his actions and his change in use of the property, Mr. Audet's neighbors requested that the staff for the District 5 Environmental Commission determine whether Mr. Audet needed an Act 250 permit. Id. ¶ 4. The District 5 Coordinator ultimately concluded that he did need a permit. Id. Mr. Audet thereafter requested a declaratory ruling from the former Vermont Environmental Board that, because the property was not part of his business, Act 250 jurisdiction did not attach. Id. ¶ 5. In the interim, Mr. Audet ceased his use of the property for storage and claimed that he was no longer using the property as part of his business. Id. The former Environmental Board thereafter ruled that Act 250 jurisdiction did not apply to Mr. Audet's recently acquired property. Id.

6

Mr. Audet's neighbors appealed the Environmental Board's determination to the Vermont Supreme Court. The Court agreed with the neighbors that, to the extent that the former Board based its determination upon an unspecified de minimis exception to the applicable Environmental Board rule, that was an error. Id. ¶10. The Court, citing its prior decision in Conservation Law Found. v. Burke, 162 Vt. 115, 121 (1993), stated that "if an administrative agency wishes to include a de minimis exception to its regulations, it must do so explicitly in [the] rulemaking process." Id.¶10.

However, the Court then went on to affirm the former Environmental Board's determination that Act 250 jurisdiction did not attach to Mr. Audet's property because he was no longer using the property as part of his business. Id. ¶¶ 11–16. The Supreme Court reasoned that Act 250 jurisdiction does not attach when a party begins using his or her property in a way that could constitute "development" under Act 250 but then, in good faith, ceases that use before engaging in any "construction, physical change to the land or other ongoing impact that would require Act 250 review." Id. ¶¶ 11–14. The Court concluded that Mr. Audet had abandoned his business use in good faith without completing any construction, physical change to his property, or other activity that resulted in an ongoing impact requiring an Act 250 permit. Id. ¶ 14. The Court then concluded that, consequently, Mr. Audet was not subject to Act 250 jurisdiction. Id. ¶ 14.

Audet does not speak to a situation where some construction has occurred, as is the situation in the pending appeal, since some improvements have been made to the Festival Area. However, the case does raise the question of how the activities associated with the Festival, an event which occurs no more than four days per year, could trigger Act 250 jurisdiction when those activities cease each year after the Festival concludes. It appears indisputable that, at least when Mr. Audet was engaged in the "bad neighbor" uses of his property, his activities and uses were much more substantial and had a greater potential to cause significant impacts than any of the Festival activities. We are inclined to conclude that, if Mr. Audet's more substantial site activities and uses did not trigger the jurisdictional authority of Act 250 after he abandoned them in good faith, the Festival activities cannot do so either. When we acknowledge the current characteristics of the Festival activities—that the event occurs for no more than four days out of the year and ceases for the year thereafter—we conclude that the Festival activities, as currently presented, should not give rise to Act 250 jurisdiction.

7

## II. **Whether the Panel's De Minimis Exception Applies**

Audet is not our only source of guidance here because, in 2009, in response to Audet, the Panel adopted a de minimis exception to its definition of the term "construction of improvements" by amending Act 250 Rule 2(C)(3)(c).[5] In so doing, the Panel implemented a de minimis exception to when improvements to property trigger Act 250 jurisdiction.

The specific legal question before us is whether the Festival organizers, who concede that they completed most of their site improvements in 2006, can avail themselves of the de minimis exception to the Act 250 jurisdictional trigger when that exception was not enacted until 2009, after the improvements were made. While the general principal applicable to Act 250 proceedings is that the law in effect when the proceeding is commenced is the law that applies, the question we must answer here is what activity commences an Act 250 proceeding when the improvements at issue have already been completed and when the Court, and the District Commission before us, is in the preliminary stage of determining whether Act 250 jurisdiction applies to those improvements. See Re: Okemo Limited Liability Co., et al, No. #2S0351-24B-EB, Mem. of Decision, at 5 (Vt. Envtl. Bd. May 10, 2004);[6] In re Ross, 151 Vt. 54, 56, 57 n.1 (1989).

This issue appears to be one of first impression. The two principal parties here, and the Panel as intervener, note that their legal research has not revealed any prior decision of our Supreme Court, this Court, or the former Environmental Board, that addresses whether the de minimis exception can apply retroactively to improvements made before the exception was established. Our legal research has also not yielded any precedent directly on point. However, for the reasons stated below, we ultimately conclude that the date the improvements were made is not the date of significance here. Rather, given the early determinations that Act 250 jurisdiction was not triggered for improvements, the date of significance here is the date that the original jurisdictional opinion regarding the Festival was requested by Appellants, sometime in 2010. Thus, under the reasoning detailed below, we ultimately determine that we do not have to address whether the de minimis exception adopted in 2009 can be applied

---

[5] Pursuant to 10 V.S.A. § 6025(b), the Panel possesses the authority to enact "substantive rules . . . that interpret and carry out the provisions of [title 10, chapter 151] that pertain to land use regulat[ion]."

[6] Given the expertise and quasi-judicial experience of the former Environmental Board, we show its prior decisions the same precedential weight and considerations as decisions from this Court, as directed by 10 V.S.A. § 8504(m).

8

retroactively; Festival organizers can avail themselves of the exception because it was in place when the original jurisdictional opinion was sought.

Appellants and the Panel presented two arguments to support their contention that the Festival organizers cannot benefit from the enactment of the de minimis exception. First, both Appellants and the Panel make reference to determinations by this Court, later affirmed by the Vermont Supreme Court, in an appeal entitled In re Times & Seasons, LLC Act 250 Reconsideration, No. 45-3-09 Vtec (Vt. Envtl. Ct. March 29, 2010)(Durkin, J.), aff'd, 2011 VT 76. That appeal concerned an application for an Act 250 permit, denied by the Supreme Court in a prior proceeding,[7] for which the applicant sought reconsideration to take into account a change in the statutory provisions that had occurred after the denial of his application. Id. at ¶ 5. This Court, and then the Supreme Court on appeal, concluded that the applicant could not enjoy the benefits of a change in this statutory definition when requesting reconsideration of a prior application because an applicant "may not simultaneously take advantage of the laws in effect at the time of the initial application and those in effect at the time of the reconsideration application." Times & Seasons, 2011 VT 76, ¶11 ("[T]he submission of a reconsideration application is not a separate vesting event. . . . To decide otherwise would be contrary to our vested rights doctrine, which allows the applicant on reconsideration to maintain the advantage of favorable findings when laws or regulations have changed unfavorably.")

In the case at bar, no Act 250 application has been filed and no reconsideration of a permit determination has been requested. Instead, the appeal before us concerns a jurisdictional opinion, a decision which answers the preliminary question of whether a landowner's activities trigger Act 250 jurisdiction. Further, the original jurisdictional opinion, and the reconsidered jurisdictional opinion now on appeal, were both requested after the de minimis exception was added to the Act 250 rules; there was no intervening change in the statutory law as there was in Times & Seasons. For these reasons we do not find Times & Seasons applicable to these proceedings.

Appellants and the Panel's second argument is that 1 V.S.A. § 214(b)(2), a provision that limits the retroactive application of laws, prevents the de minimis exception in Act 250 Rule 2(C)(3)(c) from applying to the Festival improvements. See 1 V.S.A. § 214(b)(2) ("The amendment or repeal of an act or [statutory] provision . . . shall not . . . [a]ffect any right, privilege, obligation or liability acquired, accrued or

---

[7] See In re Times and Seasons, LLC, 2008 VT 7, 183 Vt. 336.

9

incurred prior to the effective date of the amendment . . . ."). The core of their argument is that the de minimis exception cannot apply retroactively. For the reason detailed below we ultimately conclude that the Festival organizers can benefit from the de minimis exception without the retroactive application of that provision; we determine, as described below, that the activity commencing the Act 250 proceeding here is the request for the original jurisdiction opinion, a request sought by Appellants after the 2009 amendment to Act 250 Rule 2(C)(3)(c) was enacted.

We find illustrative, if not analogous to the situation here, the procedural circumstances outlined by the former Environmental Board when it first reviewed the jurisdictional claims against Mr. Audet and announced the following:

> As this is an instance where there has never been a final determination as to Act 250 jurisdiction, and as this is a *de novo* proceeding, the "present state of affairs" – or the status quo – is that there is no jurisdiction over the tracts in question. The burden of proof is therefore on the party that claims that jurisdiction should attach.

Re: Audet, d/b/a Joe Audet Auto and Truck Sales, Inc., No. 409-Declaratory Ruling, Findings of Fact, Conclusions of Law and Order, at 9–10 (Vt. Envtl. Bd. Dec. 5, 2002) (citing Re: Town of Williston Road Improvements, No. 381-Declaratory Ruling, Findings of Fact, Conclusions of Law, and Order, at 4-5 (Vt. Envtl Bd. Jan. 13, 2001)). Thus, we determine that when the Court or a district commission is in the preliminary stage of determining whether Act 250 jurisdiction attaches to a landowner's previous activities, the activity commencing the Act 250 proceeding is either some showing that Act 250 jurisdiction does apply to the landowner's previous activities or the submission of a request by a party for a jurisdictional opinion from a district coordinator.

Appellants here do not contest the assertions made on Hay Bale's behalf at trial that the Permit Compliance Officer previously advised that no Act 250 permit was needed for the planned Festival improvements and associated activities. Thus, this jurisdictional dispute came before the District Coordinator in 2010 with no prior determination or showing that the Festival improvements and associated activities triggered Act 250 jurisdiction. By 2010, when the original request for a jurisdictional opinion was made by Appellants, the de minimis exception, a 2009 amendment to Act 250 Rule 2(C)(3)(c), was in effect. Thus, it was the law in effect when the Act 250 proceeding here was commenced.

Consequently, we conclude that our review should not be based on the version of Act 250 Rule 2(C)(3)(c) in effect in 2006 when the improvements were made to the Festival Area, but should instead utilize the version of Rule 2(C)(3)(c) in effect in 2010 when the initial jurisdictional opinion was requested. Thus, the Festival organizers can benefit from the enactment of the de minimis exception to the Act 250 jurisdictional trigger.

## III. <u>Application of the De Minimis Exception</u>

Jurisdictional opinions are unique from Act 250 permit determinations, particularly in the procedural posture that gives rise to such opinions. First, a jurisdictional opinion may be requested by "any person," including those who would not have standing to appeal that jurisdiction opinion or the grant or denial of an Act 250 permit application. 10 V.S.A. § 6007(c); see also Act 250 Rule 3(A); <u>In re Marcelino Waste Facility (Appeal from Act 250 JO #4-205, 3rd Recons.)</u>, No. 44-2-07 Vtec, slip op. at 2, 4 (Vt. Envtl. Ct. Nov. 6, 2007) (Durkin, J.). Unless the requesting party seeks a "final determination," a jurisdictional opinion may be rendered without prior notice to other parties, including perhaps even the owner of the land that is the subject of the jurisdictional opinion request. See 10 V.S.A. § 6007(c). Here, it appears from the exhibits before us that a final determination was rendered only after Hay Bale requested reconsideration.

A jurisdictional opinion also does not necessarily have the precedential weight of a district commission determination on an Act 250 permit application. Unlike a decision to grant or deny an Act 250 permit application, jurisdictional opinions are issued by a district coordinator and not by the district commission. See Act 250 Rule 3. Also, a jurisdictional opinion is issued not after a full evidentiary proceeding, but rather is based, at least initially, solely upon the representations made by the requesting party. Ultimately, a jurisdictional opinion does not give the requestor a permit; it can become a final determination once the appeal period passes, but, once final, it is nothing more than a determination that an Act 250 permit is or is not required, based upon the facts presented. As the former Environmental Board has noted, an Act 250 jurisdictional determination "is only as good as the facts upon which it is based." <u>Re: Dexter and Susan Merritt</u>, Dec. Ruling #407, Mem. of Decision, at 6 (Vt. Envtl. Bd. June 20, 2002), <u>aff'd</u> 2003 VT 84, 175 Vt. 624 (mem.) (quoting <u>Re: Catamount Slate, Inc. et al.</u>, Dec. Ruling #389, Mem. of Decision, at 11 (Vt. Envtl. Bd. June 29, 2001), <u>rev'd on other grounds</u>, 2004 VT 14, 176 Vt. 284).

We therefore embark to rule on the question presented to us by Appellants, which is the same question first put before the District Coordinator: whether, based on the facts presented, the Festival improvements and associated activities trigger Act 250 jurisdiction. To render this determination, as discussed above, we must employ the Act 250 rules in effect at the time that the initial request for a jurisdictional determination was made: the rules as last amended on July 10, 2009.

The July 10, 2009 version of Rule 2(C)(3)(c) creates a de minimis exception to the general definition of the statutory term "construction of improvements" as that term is used within 10 V.S.A. § 6001(3)(A)(ii) and the definition of "development." Appellants and the Panel correctly suggest that the Rule 2(C)(3)(c) de minimis exception places the burden of proof upon Hay Bale to show that the exception applies, since it is the entity requesting that it be applied. But, we decline to adopt the remaining suggestion from Appellants and the Panel that a further proceeding is necessary to hear the presentation of evidence before we can determine the applicability of this exception. Rather, we conclude that we afforded the parties sufficient opportunity to present evidence on whether Hay Bale has adequately met its burden of demonstrating that the Festival improvements are "de minimis" and "will have no potential for significant adverse impact under any of the criteria of 10 V.S.A. Sections 6086(a)(1) through (10) directly attributable to such construction or to any activity associated with such construction." Act 250 Rule 2(C)(3)(c).

The evidence presented by Hale Bale to the Court at trial, and for the most part undisputed, is that the Festival improvements consist of (1) a sign and its posts, both of which were permanently removed after the request for an Act 250 jurisdictional opinion occurred; (2) a portable stage, set on a hay wagon with wheels, that is often moved before and after the event; (3) three posts and temporary lights that are only used during the Festival and removed after the event concludes; (4) one or more portable generators brought on and taken off the Windmill hay field; (5) three wooden boxes housing electrical connection junctions; and (6) electrical extension cords buried several inches underground that supply the temporary electricity to the portable stage and lights. These improvements are all de minimis in accordance with Rule 2(C)(3)(c)(i) in that they are small and unobtrusive or are removed at the conclusion of the Festival each year.

Additional evidence presented by Hay Bale indicates that the Festival has historically occurred on no more than four days of an entire year. While over 1,200

individuals have sometimes attended the Festival and camped on its leased hay fields, the event and its attendant noise and traffic conclude shortly thereafter. In the nine-year history of the event, Hay Bale's registered agent and the staff it employs, including deputies from the Grand Isle County Sheriff's Department, have not received a single complaint. Thus, we conclude that historically, and as described at trial, the Festival improvements and associated activities do not have the potential for significant adverse impact under any of the Act 250 criteria. See Act 250 Rule 2(C)(3)(c)(ii). There was no credible evidence presented of any significant impacts caused by the Festival improvements and associated activities.

We therefore conclude that Hay Bale is entitled to claim a de minimis exception. Therefore, the Festival improvements and associated activities are not within Act 250 jurisdiction. In other words, they do not constitute "development" as it is described in 10 V.S.A. § 6001(3)(A)(ii) and § 6081(a) and Act 250 Rules 2(C)(3)(c) and 3.

## Conclusion

For the reasons discussed above, we conclude that historically the Festival improvements and associated activities are exempt from the definition of "development" as that term is used in 10 V.S.A. § 6081(a) as a jurisdictional trigger for the application of Act 250. Consequently, Hay Bale is not obligated to obtain an Act 250 permit.

Our determination is limited to the facts presented in this appeal. This determination does not control any future permit requirements that may arise as a consequence of material changes in future Festival improvements or associated activities.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court concerning the pending Jurisdictional Opinion proceedings.

Done at Berlin, Vermont, this 3rd day of January 2012.

_____
Thomas S. Durkin, Environmental Judge

13