## STATE OF VERMONT
## SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  }  |  |
|---|---|
| **In re North East Materials Group, LLC**   } | Docket No. 143-10-12 Vtec |
| **(Appeal of Neighbors for Healthy Communities)**  } |  |
|  }  |  |

### Decision on Motion for Summary Judgment and Motions to Strike and Preclude

Neighbors for Healthy Communities (Neighbors), 26 citizens, appeal a jurisdictional opinion (JO) of the District 5 Environmental Commission Coordinator (District Coordinator), finding that the rock crushing operations of North East Materials Group, LLC (NEMG) at the Rock of Ages quarry in the Towns of Barre and Williamstown, Vermont, do not constitute a substantial change to a development in existence prior to Act 250 and therefore do not require an Act 250 permit. Neighbors present eleven questions for this Court's review. We now consider Neighbors' motion for summary judgment and motion to strike and preclude.[1] We also address a motion to strike filed by Appellees NEMG and Rock of Ages Corporation.[2]

### Factual Background

To put the pending motions into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1. The Rock of Ages quarry property comprises approximately 1,200 acres and approximately five quarrying sites in the Towns of Barre and Williamstown, VT.

---

[1] The procedural history of the pending motions is comprised of the following:

- December 17, 2008: District Coordinator Ed Stanak issued a JO finding that the addition of a crusher at the Rock of Ages property did not constitute a substantial change.
- November 2, 2010: District Coordinator Ed Stanak issued a JO finding that the addition of a crusher adjacent to Smith Quarry at the Rock of Ages property did not constitute a substantial change.
- May 3, 2012: Neighbors requested a JO on whether the addition of this crusher constituted a substantial change.
- May 16, 2012: District Coordinator Boolie Sluka issued a JO declining to overturn District Coordinator Stanak's November 2, 2010 JO.
- Neighbors requested reconsideration of District Coordinator Sluka's decision.
- September 28, 2012: District Coordinator Warren Foster issued a JO declining to overturn District Coordinator Sluka's May 16, 2012 decision, again finding that Appellees' rock crushing operations do not constitute a substantial change and therefore do not require an Act 250 permit.
- Neighbors' appeal of District Coordinator Foster's September 28, 2012 decision is now before us.

[2] Although this appeal is captioned "In re North East Materials Group, LLC," the Rock of Ages Corporation, the owner and operator of the Rock of Ages quarry, is also an appellee. NEMG and Rock of Ages Corporation are referred to collectively as "Appellees," unless otherwise noted.

2. Graniteville Road runs through the Rock of Ages property.

3. Three quarrying sites, including the Smith quarry, are generally north of Graniteville Road. Two quarrying sites, including the Adam quarry, are generally south of Graniteville Road.

4. The Rock of Ages quarry has been in operation for around 100 years.

5. The rock crusher at issue, operated by NEMG between the Smith and Adam quarries, began operating in 2009 after the District 5 Environmental Commission Coordinator determined, in a December 17, 2008 JO, No. 5-01, that a proposed crushing operation at the Rock of Ages property did not constitute a substantial change and did not require an Act 250 permit.

6. The District Coordinator issued additional jurisdictional opinions in 2010 and 2012 finding that rock crushing operations adjacent to the Smith Quarry at Rock of Ages did not constitute a substantial change to a pre-existing development and that the associated rock crusher therefore did not require an Act 250 permit.

7. On April 11, 2012, NEMG filed an application with the District 5 Environmental Commission (Commission) to operate a 180 ton/hour hot mix asphalt plant at the Rock of Ages property. After determining that the application was complete, the District Coordinator noticed the asphalt plant application for hearing on April 26, 2012. On January 24, 2013, the Commission approved the application and issued the permit, later modified by a decision on motions to alter dated February 26, 2013. In re: North East Materials Group, LLC, No. 5W0966-6 (altered), Land Use Permit (Dist. 5 Envtl. Comm'n Feb. 26, 2013).

8. Neighbors appealed the issuance of that land use permit to this Court. The Court has coordinated the asphalt plant and JO appeals; however, the asphalt plant appeal (Docket No. 35-3-13 Vtec) is scheduled to be ready for trial at a later date, July 1, 2014.

9. This decision only considers Neighbors' appeal of the September 28, 2012 JO finding that NEMG's rock crushing operation is not subject to Act 250 review. This appeal is scheduled for a site visit and trial December 3 and 4, 2013.

### Discussion

Act 250, 10 V.S.A. §§ 6001 through 6093, was enacted over forty years ago "to protect Vermont's lands and environment by requiring statewide review of 'large-scale changes in land utilization.'" In re Audet, 2004 VT 30, ¶13, 176 Vt. 617 (mem.) (quoting Comm. to Save Bishop's House, Inc. v. Med. Ctr. Hosp. of Vt., Inc., 137 Vt. 142, 151 (1979)). A party proposing land

"development," must obtain an Act 250 permit. 10 V.S.A. § 6081(a). "Development" is defined as one or more of 10 listed activities, including the construction of improvements for commercial or industrial purposes on a tract or tracts of land involving more than 10 acres in a municipality that has adopted permanent zoning and subdivision regulations or 1 acre in a municipality that has not. 10 V.S.A. § 6001(3)(A)(i) and (ii). Act 250 Rule (2)(C)(3) defines "construction of improvements" as "any physical action on a project site which initiates development," subject to certain enumerated exceptions. 16-5 Vt. Code R. § 200:2(C)(3) (2009).[3]

Any development that was commenced before June 1, 1970 is a "pre-existing development" and is exempt from the permit requirement. Id. at § 200:2(C)(8) (2009); 10 V.S.A. § 6081(b). A permit is required, however, for any "substantial change" to a pre-existing development, defined as "any change in a pre-existing development or subdivision which may result in a significant adverse impact with respect to any of [Act 250's 10 criteria]." 10 V.S.A. § 6081(b); 16-5 Vt. Code R. § 200:2(C)(7) (2009). The initial burden is on the party seeking an exemption to show a pre-existing development. Re: Hale Mountain Fish and Game Club, Inc., No. 435, Findings of Fact, Conclusions of Law, and Order, at 14 (Vt. Envtl. Bd. Aug. 4, 2005). Once the party seeking exemption makes this showing, the burden shifts to the opposing party to establish that a substantial change has occurred. Id.; In re Vermont RSA Ltd. P'ship., 2007 VT 23, ¶ 10, 181 Vt. 589. The party seeking an exemption, however, retains the burden of producing sufficient information on the pre-1970 operation for us to determine whether a substantial change exists. Re: Hale Mountain Fish and Game Club, Inc., No. 435 at 14; Re: F.W. Whitcomb Construction Co., No. 408, Findings of Fact, Conclusions of Law, and Order, at 8–9 (Vt. Envtl. Bd. Dec. 19, 2002). Thus, as the parties seeking exemption, NEMG and Rock of Ages carry the burden of first showing a pre-existing development.

## I. Neighbors' Motion for Summary Judgment

In a May 9, 2013 decision, we dismissed Neighbors' Questions 5, 10, and 11, leaving Questions 1–4 and 6–9 for a merits hearing which was subsequently scheduled for December 3 and 4, 2013. In re North East Materials Group, LLC, No. 143-10-12 Vtec, slip op. at 6 (Vt. Super. Ct. Envtl. Div. May 9, 2013) (Walsh, J.). In October 2013, Neighbors moved for summary judgment, asking this Court to find as a matter of law that Appellees must obtain an Act 250 permit for the rock crushing at issue. Neighbors argue that Appellees cannot meet their burden of demonstrating that NEMG's operation is exempted, because "intervening public highways"

---

[3] The Legislature amended Rule 2(C)(3) in 2013. 16-5 Vt. Code R. § 200:2(C)(3) (2013). Because the JO was requested in 2012, the 2009 language applies here.

separate the NEMG rock crushing site at issue in this appeal from "alleged past [crushing] sites" as a matter of law. Neighbors also argue that NEMG's rock crushing is a "substantial change" from any alleged past crushing as a matter of law. For these reasons, Neighbors argue that any exemption that may have applied to other portions of the quarry operation cannot apply to NEMG's rock crushing.

We will grant summary judgment to a moving party if that party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). The Court is directed to "accept as true the allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material," and to give the non-moving party the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (citations omitted). When the non-moving party bears the burden of proof at trial, that party must "persuade the court that there is a triable issue of fact" once the moving party shows that there is an "absence of evidence in the record to support the nonmoving party's case." Boulton v. CLD Consulting Eng'rs, 2003 VT 72, ¶ 5, 175 Vt. 413 (quoting Ross v. Times Mirror, Inc., 164 Vt. 13, 18 (1995)).

Granting summary judgment in the Neighbors' favor requires the Court to make several important factual determinations based upon the evidence so far presented viewed in the light most favorable to the Appellees. In particular, the Court first must find that the parties do not dispute material facts regarding the parameters of the alleged "pre-existing development." We must also find upon undisputed facts that NEMG's rock crushing operation is either beyond the parameters of any pre-existing development, or that the operation constitutes a "substantial change." As described in more detail below, the Court finds material facts in dispute regarding these determinations and therefore summary judgment is inappropriate at this stage.

In support of their motion, Neighbors filed a statement of undisputed material facts, affidavits of their counsel, Christopher D. Ahlers, Esq., and of several neighbors, and other evidence. In doing so, the Neighbors allege that the location of NEMG's rock crushing between the Adam and Smith quarries is "distinct and separate" from the locations of any earlier crushing activities due to distance and intervening roads. (Neighbors' Mem. of Law in Support of Mot. for Summ. J. at 4, filed Oct. 4, 2013). They also allege that the rock crushing at issue is separate and distinct from other quarrying activities. (Neighbors' Reply in Support of Mot. for Summ. J. at 8, filed Nov. 8, 2013). Neighbors argue that the Court must therefore find NEMG's operation outside any pre-existing development. Id. at 8–10. Neighbors also allege that

4

NEMG's rock crushing creates various impacts, including noise, particulate matter in the form of stone dust, and truck traffic and congestion. (Neighbors' Statement of Undisp. Mat. Facts at 3, filed Oct. 4, 2013); (Ahlers Aff. at ¶ 2–3, filed Oct. 4, 2013); (Marc Bernier Aff. at ¶¶ 4–17, filed Oct. 4, 2013); (Lori Bernier Aff. at ¶¶ 3–8, filed Oct. 4, 2013); (Austin Aff. at ¶¶ 4–12, filed Oct. 4, 2013). Neighbors allege that the addition of a rock crusher at the Rock of Ages site and these identified impacts constitute a "substantial change" which is not exempted.

In response, Appellees filed a statement of disputed material facts, affidavits of past and present employees at the Rock of Ages property, and other evidence. In particular, Appellees point to evidence of pre-1970 quarry-related operations at the Rock of Ages property, including evidence of rock crushing operations. (Appellees' Statement of Facts in Disp. at 1-7, filed Oct. 28, 2013); see, e.g., (Appellees' Exhibit 1, filed Oct. 28, 2013); (Appellees' Exhibit 2, filed Oct. 28, 2013); (Appellees' Exhibit 3, filed Oct. 28, 2013) (referencing a crusher at Boutwell quarry); (Murray Aff. at ¶¶ 6 and 18, filed Oct. 28, 2013) (noting Boutwell Quarry is part of the Rock of Ages property). Appellees also presented evidence that rock crushing is an "intermittent activity in a quarry" which serves one or more purposes in a quarry operation. (Appellees' Statement of Facts in Disp. at 5, filed Oct. 28, 2013); (Murray Aff. at ¶¶ 7-9, filed Oct. 28, 2013). In addition, Appellees submitted evidence that NEMG's "moveable/portable" rock crushing equipment is located near two Rock of Ages working quarries. (Appellees' Statement of Facts in Disp. at 6, filed Oct. 28, 2013); (Murray Aff. at ¶¶ 11 and 17, filed Oc. 28, 2013); (Hart Aff. at ¶ 7, filed Oct. 31, 2013). Finally, Appellees provided evidence that operations at the Rock of Ages site created truck traffic prior to 1970. (Appellees' Statement of Facts in Disp. at 3-4, filed Oct. 28, 2013).

Considering all evidence and allegations, and giving Appellees the benefit of all reasonable doubts and inferences, we conclude that Appellees have demonstrated a dispute of material facts regarding the scope of any alleged pre-existing development, the scope of NEMG's rock crushing operation, and whether the operation constitutes a substantial change. Because we are persuaded that there are triable issues of fact, we cannot grant summary judgment. We look forward to a full presentation of admissible evidence at trial to assist us in determining the location and nature of particular activities both pre-1970 and post-1970 and the possible impacts on Act 250's 10 criteria. We also look forward to the site visit at the Rock of Ages property to provide context for the evidence provided at trial.

For these reasons, Neighbors' motion for summary judgment is **DENIED**.

## II. Appellees' Motion to Strike

Appellees ask the Court to strike parts of the Affidavits of Marc Bernier, Lori Bernier, and Christopher D. Ahlers, Esq., and certain exhibits attached to Neighbors' motion for summary judgment. Because the Court denies Neighbors' motion for summary judgment, Appellees' motion to strike is **DENIED AS MOOT**.

## III. Neighbors' Motion to Strike and Preclude

Neighbors ask the Court to strike and preclude affidavits and testimony from four additional witnesses and other evidence provided by Appellees in their October 28, 2013 response to Neighbors' motion for summary judgment and in their October 29, 2013 supplemental disclosure. Neighbors argue that the timing of disclosure related to these witnesses and documents violates this Court's Scheduling Order, V.R.C.P. 26(e) regarding supplementing disclosures and responses, and V.R.C.P. 1 regarding fairness and efficiency. We disagree.

In a Scheduling Order and subsequent Entry Order on a motion for enlargement of time, the Court set a timeline for discovery and trial preparation, requiring the parties to disclose "all information, documents, or materials required to be disclosed under F.R.C.P. 26(a)(1)(A)(i)" by July 12, 2013. In re North East Materials Group, LLC, Nos. 143-10-12 Vtec and 35-3-13 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 2, 2013) (Walsh, J.). We also ordered that all depositions conclude by September 20, 2013 and that this matter be trial ready on or before October 31, 2013. In re North East Materials Group, LLC, No. 143-10-12 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Aug. 12, 2013) (Walsh, J.). Finally, the Court ordered that 20 days before trial, each party "must serve and file with the Court the name of each witness intended to be called at trial (other than impeachment only witnesses) and a list identifying each document or other exhibit to be offered at trial." In re North East Materials Group, LLC, Nos. 143-10-12 Vtec and 35-3-13 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. July 2, 2013) (Walsh, J.).

As a preliminary matter, we note that the "trial ready date" guides the parties and the Court in scheduling a matter for a merits hearing by setting a specific calendar date after which the hearing may take place. It is not a deadline for discovery or disclosure of information. Rather, the deadline set in this matter for serving and filing a list of trial witnesses and exhibits is dependent on the <u>actual</u> trial date. Here, the parties were required to serve and file this list 20 days before the December 3 and 4, 2013 trial. In re North East Materials Group, LLC, Nos. 143-

10-12 Vtec and 35-3-13 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. July 2, 2013) (Walsh, J.) Appellees and Neighbors complied with this requirement.

V.R.C.P. 26(e) requires that a party who has made an initial disclosure or responded to requests for information must supplement or correct that disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Rule 26 expressly contemplates parties learning new or more complete information during the discovery process, and it requires timely disclosure of the information. In addition, as Neighbors have recognized, circumstances may arise that require flexibility in completing discovery, such as travel, scheduling challenges, or illness. (Neighbors' Motion to Strike and Preclude at 2, filed Nov. 8, 2013). Absent a showing of bad faith or material misrepresentation in the discovery process, we will neither strike the affidavits and supporting materials in a party's response to a summary judgment motion nor preclude them from calling witnesses at trial solely because they were identified in supplemental disclosures.

Appellees first identified Duncan McKay in their responses to interrogatories on August 28, 2013. Appellees note that they first learned of one of Neighbors' legal theories from Neighbors' October 4, 2013 summary judgment motion. (Appellees' Mem. in Opp. to Mot. to Preclude at 3, filed Nov. 20, 2013). In response, on October 29, 2013 Appellees provided Neighbors five additional documents and the contact information of Duncan McKay, Irvin Stephenson, Robert Zambon, and Roland Hayford. Id. at 3; (Mem in Support of Neighbors' Mot. to Strike and Preclude at 2, filed Nov. 8, 2013). Appellees' opposition to summary judgment included the affidavits of Mr. McKay, Mr. Stephenson, and Mr. Zambon. Mr. Hayford was apparently identified for disclosure purposes only, and Appellees communicated that they did not intend to call him as a witness. (Appellees' Mem. in Opp. to Mot. to Preclude, Exhibit 1, filed Nov. 20, 2013).

On the information before us, we conclude that Appellees timely disclosed their additional witnesses upon learning that their previous disclosures or responses to interrogatories may have been incomplete. Appellees offer that they did not disclose these four individuals earlier because Appellees did not anticipate the specifics of Neighbors' legal arguments and therefore did not know the individuals' knowledge may be relevant. Neighbors have not presented anything to contradict this argument or show bad faith in Appellees' discovery process. We find that Neighbors had sufficient time in the three months before trial to depose Mr. McKay. We also find that the month before trial gave Neighbors sufficient time

7

to depose the additional witnesses if they so desired. In sum, Neighbors fail to show any evidence of bad faith, material representation, or prejudice regarding the disclosures at issue.

For these reasons, we conclude that the disclosures at issue did not violate the Court's Scheduling Order or Entry Order on enlargement of time, V.R.C.P. 26(e), or V.R.C.P. 1. Neighbors' motion to strike and preclude is therefore **DENIED.**

Done at _____, Vermont this 22nd day of November, 2013.

_____

Thomas G. Walsh, Environmental Judge